**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LETICIA CEJA-CORONA, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CVS PHARMACY, INC., a corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 1:12-CV-01868-AWI-DLB<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION AND DISMISSING FLSA CLAIM FOR SECURITY SCREENING ACTIVITIES WITH LEAVE TO AMEND<br><br>(Doc. 17) |

**BACKGROUND**

Plaintiff filed the instant class action complaint on October 9, 2012. Doc 4-1. The sixth cause of action alleged that Defendants failed to pay employees at CVS distribution centers nationwide for passing through security and for donning and doffing aprons, in violation of the Fair Labor Standards Act ("FLSA"), 29 USC § 201 *et seq*. On March 4, 2013, the Court granted Defendant CVS's motion to dismiss both claims. It dismissed the security claim without leave to amend and the donning and doffing claim with leave to amend within thirty days. Doc. 11.

Before the Court is Plaintiff's motion, filed April 25, 2013, to reconsider its decision on the security claim. Doc. 17. The motion is based on newly published legal authority—the opinion in *Busk v. Integrity Staffing Solutions, Inc*., 713 F.3d 525 (9th Cir. 2013), filed April 12, 2013. On reconsideration, Plaintiff asks the Court to deny Defendant's motion to dismiss or, in the alternative, to grant leave to amend. Doc. 17. Defendant has filed an opposition, and Plaintiff has filed a reply.

1

Docs. 18, 19. Plaintiff's reply brief makes the additional argument that reconsideration is justified by certain newly discovered evidence. On May 30, 2013, the Court vacated the hearing on Plaintiff's motion and took the matter under submission. Doc. 20.

For the reasons that follow, Plaintiff's alternative request is GRANTED. The security screening claim, formerly dismissed with prejudice, is dismissed with leave to amend within thirty days of service of this order.

**STANDARD FOR RECONSIDERATION**

A district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper,* 254 F.3d 882, 889 (9th Cir. 2001); *Smith v. Massachusetts*, 543 US 462, 475 (2005). The court may do so "at any time" before the entry of final judgment. Fed. R. Civ. P. 54(b); *see* Local Rule 230(j) (procedural requirements). This allows district courts "to correct not only simple mistakes, but also decisions based on shifting precedent, rather than waiting for the time-consuming, costly process of appeal." *United States v. Martin*, 226 F.3d 1042, 1049 (9th Cir. 2000). Consistent with this purpose, courts generally avoid exercising this power unless they learn of newly discovered evidence, an intervening change in controlling law, or reason to believe they committed clear error. *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (applying this standard to motion to "alter or amend a judgment" under Fed. R. Civ. P. 59(e)); *Pit River Home & Agr. Co-op. Ass'n v. United States*, 30 F.3d 1088, 1096-97 (9th Cir. 1994) (under law of the case doctrine, same standard applies to motion to reconsider interlocutory order).

**THE FAIR LABOR STANDARDS ACT**

Under the FLSA, an employee must be paid for all hours worked. *See* 29 U.S.C. §§ 206, 207. The Portal-to-Portal Act carves out two exemptions, both relating to activities which the employee performs prior to commencing or subsequent to ceasing his principal activities. 29 U.SC. § 254(a). The first is for time traveling to and from the place where he performs his principal activities. The second is for activities which are "preliminary to" or "postliminary to" those activities. *Id.* Any activity that is "integral and indispensable" to a principal activity is itself a principal activity. *IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005).

**FACTS**

**A.    The Complaint**

Plaintiff claims violations of the FLSA on behalf of persons who worked at CVS distribution centers nationwide (the "Nationwide Employees"). Complaint (Doc 4-1) at ¶¶3, 17, 55-62. As relevant here, she makes these allegations:

> 58.    . . . Defendants required Nationwide Employees to report to work daily before the start of their shifts in order to pass mandatory security checks (which Defendants controlled) . . . . However, Defendants did not allow Nationwide Employees to clock in so that they could be paid for such time. Moreover, Defendants required Nationwide Employees at the end of their shifts each day to . . . undergo another mandatory, controlled security check at Defendants' workplace after they had clocked out.
> 59.    . . . [P]assing through Defendants' mandatory security checks . . . [was] an integral and indispensable part of Nationwide Employees' principal activities for Defendants and were performed necessarily and primarily for the benefit of Defendants.

**B.    The Court's Order Dismissing the Security Screening Claim**

The Ninth Circuit defines "integral and indispensable" to mean "necessary to the principal work performed and done for the benefit of the employer." *Bamonte v. City of Mesa*, 598 F.3d 1217, 1225 (9th Cir. 2010) (emphasis omitted). Applying this definition, the Court dismissed Plaintiff's security screening claim, explaining that Plaintiff had not pled facts suggesting that going through security was "integral" to the job in this sense of being done for the benefit of the employer.

By itself, this failure to plead sufficient facts would have warranted dismissal with leave to amend. However, the Court also observed a deeper problem: it found that "going through security is a preliminary and postliminary activity barred from compensation under the Portal-to-Portal Act." In other words, going through security was noncompensable as a matter of law. On this premise, no amendment could remedy the claim. The Court dismissed it with prejudice.

In reaching this second finding, the Court relied heavily on two out-of-Circuit opinions which also concluded that certain security measures were not "integral and indispensable" to an employee's "principal activity." In *Gorman v. Consolidated Edison Corp*., 488 F.3d 586 (2nd Cir. 2007), employees of a nuclear power plant were not allowed to enter or exit the facility without passing through various security measures. In dismissing this FLSA claim, the Second Circuit explained that it would define "integral" to require that the security measures and the principal work activities must be somehow "organically joined or linked," such as in the relationship between

3

1  sharpening a knife to carving a carcass, testing an x-ray machine to taking x-rays, or feeding a dog to
2  being a K-9 officer. In its view, these security measures did not pass this test. Instead, they were
3  analogous to simple travel time. The court illustrated this conclusion by noting that the security
4  measures applied to every employee equally and even to non-employees. In a footnote, the court
5  acknowledged that there might be exceptions; it gave the example of an employee who engaged in
6  "monitoring, testing, and reporting on the plant's infrastructure security." (The significance of this
7  footnote is unclear; perhaps the screening would be related to this worker's job because it would be
8  more narrowly tailored to the specific sensitive places where he worked.) But absent such an
9  additional factor, the security screenings at this power plant were "modern paradigms of the
10 preliminary and postliminary activities described in the Portal-to-Portal Act." *Id.*[1]

11 The second case this Court relied upon was *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d
12 1340 (11th Cir. 2007). There, employees of a construction company were working at an airport.
13 They had to show identification to enter the tarmac, then travel on a bus to reach the worksite. After
14 dismissing the travel time as barred under the Portal-to-Portal Act, the court turned to the security
15 clearance activity and found this was not "integral" to completing the employment tasks. However,
16 unlike in *Gorman*, *Bonilla* did not reach this conclusion by analogizing the security activities to
17 travel time, nor did it apply *Gorman*'s interpretation of the "integral" requirement as "organically
18 joined or linked." Rather, the Eleventh Circuit defined "integral" to mean "primarily benefit[ing] the
19 employer," a definition resembling the Ninth Circuit's "done for the benefit of the employer." The
20 security measures did not meet this definition: they were neither "primarily" nor "even particularly"
21 done for the benefit of the construction company. This was evidenced by the fact that the FAA, not
22 the construction company, determined whether employees would be screened.

23 **C.   *Busk***

24 On April 12, 2003, the Ninth Circuit issued its opinion in *Busk*. In that case, the employer
25 supplied personnel to work in warehouses containing merchandise. *Busk* at *1. Its employees passed

---

[1] Part of the court's discussion was directed only at the plaintiffs' separate donning and doffing claim, inasmuch as it distinguished the nuclear power plant employees from workers at a battery plant in *Steiner v. Mitchell,* 350 U.S. 247 (1956), who "must make extensive use of dangerously caustic and toxic materials, and are compelled by circumstances, including vital considerations of health and hygiene, to change clothes and to shower." *Steiner* at 248. In the Second Circuit's opinion, *Steiner* had a "narrow" holding: "[W]hen work is done in a lethal atmosphere, the measures that allow entry and immersion into the destructive element may be integral to all work done there." *Gorman* at 593.

1 through security measures when exiting the warehouses. Plaintiffs alleged that the screenings were
2 required by the employer and were "necessary to the employer's task of 'minimizing shrinkage' or
3 loss of product from warehouse theft." *Id*.

4       The district court dismissed this claim. It did so (as the Ninth Circuit explained) because it
5 "assume[d] that *Gorman* and *Bonilla* created a blanket rule that security clearances are
6 noncompensable." *Id*. The Ninth Circuit rejected this assumption. Instead, *Gorman* and *Bonilla*
7 stood at most for the proposition that security screenings would not be compensable when they were
8 not "put in place because of the nature of the employee's work." *Id*. True, *Gorman* did characterize
9 "[t]he activities required to enter and exit Indian Point [power plant]" as "modern paradigms" of
10 preliminary and postliminary activities. However, the screenings were imposed upon every category
11 of employee and even on non-employees. In addition (as *Busk* did not mention) *Gorman* suggested
12 that there could be exceptions where the security screenings were more related to the employee's
13 work activity. *Gorman* also applied a different definition of "integral" than that used in the Eleventh
14 or Ninth Circuits—an "organic" relationship rather than "benefiting the employer." Thus, the
15 reasoning in *Gorman* was consistent with security screenings being compensable where they are
16 more related to an employee's work activity. Similarly, while *Bonilla* found that the security
17 screenings in question did not "principally benefit" the employer, it implied that security activities
18 can be compensable when they do principally benefit the employer, suggesting two factors to
19 consider: whether the screenings were mandated by the employer (the FAA had mandated these
20 screenings) and whether they were imposed without distinction (the screenings were—as *Busk*
21 observed—imposed as in *Gorman* upon "everyone who entered the workplace").

22       Applying this standard, *Busk* reviewed the complaint and concluded that the security
23 activities were "integral and indispensable" under the Ninth Circuit's definition, in that they were
24 "necessary to the principal work performed" and were "done for the benefit of the employer." *Id*. at
25 *4. The allegation that the security was to minimize theft seemed "plausible … since the employees
26 apparently pass through the clearances only on their way out of work, not when they enter." *Id*.

27
28

# ANALYSIS

## A. Dismissal Should Have Been Without Prejudice

The Court agrees with Plaintiff that it improperly dismissed her claim with prejudice. In originally reaching that conclusion, the Court relied on *Gorman* and *Bonilla* for the proposition that security screenings were not "integral and indispensable" as a matter of law. However, *Busk* clarifies that these cases did not stand for this. Rather, those screenings were noncompensable because they were unrelated to the nature of the employee's work.

However, the Court does not agree that Plaintiff has already alleged (beyond a plain assertion) that the screenings were integral and indispensable. She analogizes the security screenings in her complaint to those in *Busk*. In fact, the claims are quite dissimilar. Critically, the pleading in *Busk* explains how the security screenings benefited the employer. Plaintiff's does not.[2]

Plaintiff tacitly acknowledges this; she insists that she does allege how the screenings benefit her employer, but only if one is willing to draw these "reasonable inferences" from her complaint:

- "[C]ontemporary pharmacies are the modern equivalent to a general store or drug store and sell, in addition, to medicine, a variety of consumer products including nondurable goods such as food and drinks."
- "[E]mployees working a distribution centers were responsible for packaging and distributing the consumer goods to Defendant's pharmacies."
- "[E]mployees wearing work aprons carry tools and equipment (such as cutters, knifes, scanners) that Defendant may also want to prevent employees from stealing."
- "Defendant has an interest in protecting against loss or shrink from theft of merchandise by its employees."
- "The security checks prevent theft by employees because employees will be deterred from stealing" or because checks "enable Defendant to intercept the stolen goods."

The Court has previously declined Plaintiff's invitation to make the above-mentioned "inferences"—some of which are really requests for judicial notice—in its previous order, when it found that Plaintiff did not explain how the screenings benefited her employer. Because *Busk* has nothing to say about the propriety of drawing these inferences, the Court sees no reason to reconsider this decision.

Plaintiff's reply brief also includes some exhibits obtained in discovery, which she provides in part to underscore the propriety of these inferences. In fact, some of these exhibits illustrate just how fraught Plaintiff's desired inferences are. Specifically, Plaintiff draws the Court's attention to a

---

[2] Plaintiff also argues, without authority, that she need not allege how Defendant *intended* to benefit from the checks, Doc. 19 at 3, n.1. Her failure to state how Defendant *did benefit* renders this argument moot.

6

CVS policy stating that guards are on duty "for the purpose of guarding company assets" and that photo identification badges are "designed to protect CVS assets." But as Plaintiff fails to acknowledge, this sentence continues: "… the most important asset being its employees." On its face, this states the opposite of Plaintiff's desired inference; it denies that theft is the primary purpose of the screenings and focuses on employee safety. The Court refers to this evidence not to deprecate its usefulness in stating a claim, but to indicate why the Court will not draw controversial "inferences" that Plaintiff has not herself alleged.

The Court dismisses Plaintiff's complaint with leave to amend. If Plaintiff wishes to make these allegations in her amended pleading, she may do so.

**B.     Postponement of This Decision Is Not Necessary**

The defendant in *Busk* has petitioned the Ninth Circuit to rehear that case en banc. Doc. 18 at Ex. 1. Should the Ninth Circuit do so, the panel opinion would not be citable as precedent. Advisory Committee Note 3 to Ninth Circuit Rule 35-3; *Animal Legal Def. Fund v. Veneman*, 490 F.3d 725 (9th Cir. 2007). The Defendant in this case therefore asks the Court to postpone this decision.

Insofar as *Busk* denied that security screenings are noncompensable as a matter of law, the Court denies this request. *Busk* did not change the law. It merely clarified the meaning of *Gorman* and *Bonilla*. In reconsidering its dismissal with prejudice of the security claim, the Court agrees.

*Busk* also holds that certain security activities are "integral and indispensable" under the FLSA. Whether *Busk* remains citable might affect the activities that Plaintiff wishes to allege herself. For this reason, while the Court now grants Plaintiff thirty days to amend her complaint, the Court acknowledges the propriety of a stipulation or motion for an extension of time.

/ / /

/ / /

/ / /

**CONCLUSION**

Plaintiff's motion is GRANTED. Plaintiff's claim for compensation for time spent in security screenings, formerly dismissed without leave to amend, is dismissed with leave to amend within **thirty (30)** days of service of this order.

IT IS SO ORDERED.

Dated:   July 1, 2013

SENIOR DISTRICT JUDGE