# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LETICIA CEJA-CORONA, et al., | Case No. 1:12-cv-01868-AWI-SAB |
| Plaintiffs, | ORDER REQUIRING ADDITIONAL BRIEFING ON PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT |
| v. | |
| CVS PHARMACY, INC., | |
| Defendant. | |

On July 30, 2014, Plaintiffs Leticia Ceja-Corona and Margarita Rubio Armenta, on behalf of themselves and others similarly situated (hereinafter collectively referred to as "Plaintiffs"), filed a motion for preliminary approval of a class action settlement. (ECF No. 48.) Plaintiffs' motion is unopposed.

The hearing on Plaintiffs' motion took place on September 10, 2014. Attorney David Yeremian appeared telephonically on behalf of Plaintiffs. Attorney Thomas McInerney appeared telephonically on behalf of Defendant. For the reasons set forth below, the Court will require the parties to submit additional briefing in support of the motion.

/ / /

/ / /

/ / /

/ / /

1

# I.

# BACKGROUND

### A.   Allegations in the Operative Complaint

The operative complaint in this action is the Second Amended Complaint filed on February 26, 2014. (ECF No. 45.) Plaintiffs' complaint raises six causes of action: 1) for failure to pay minimum wages and overtime, 2) for failure to provide reporting time pay, 3) for failing to provide accurate earnings statements, 4) for failure to timely pay wages upon termination, 5) for unfair competition under California Business & Professions Code § 17200, and 6) for failure to pay wages and overtime for off-the-clock work, and 7) for penalties under California's Private Attorney's General Act, California Labor Code § 2699.

Plaintiffs Leticia Ceja-Corona and Margarita Rubio Armenta were employed by Defendant CVS Pharmacy, Inc. ("Defendant") in the County of Stanislaus in California. (Second Am. Compl. ¶ 2.) Plaintiffs originally brought this action on behalf of two classes: first, on behalf of all persons who are or have been employed by Defendant at distribution centers as nonexempt hourly employees in the State of California at any time four years prior to the filing of this lawsuit and continuing on to the present. (Second Am. Compl. ¶ 27.) The second class consists of all persons who are or have been employed by Defendant at distribution centers as nonexempt hourly employees at any time three (3) years prior to the filing of this lawsuit and continuing to the present and who elect to opt into this action. (Second Am. Compl. ¶ 27.)

Plaintiffs allege that Defendant failed to pay Plaintiffs all wages, overtime, and reporting time pay due under the California Labor Code, the applicable California Industrial Welfare Commission Wage Orders, and the Fair Labor Standards Act. (Second Am. Compl. ¶ 10.) Plaintiffs allege that, prior to clocking in for the day, they must gain admittance into distribution centers using security badges that are swiped before passing through turnstiles. (Second Am. Compl. ¶ 14.) After entering the facility, employees must deposit their personal belongings in lockers because Defendant's policy prohibits employees from taking personal belongings into areas where merchandise is stored. (Second Am. Compl. ¶ 15.) While at their lockers, employees must also collect the tools they use to perform their job duties. (Second Am. Compl.

1 ¶ 15.)  Employees then walk to the stock room, which requires employees to swipe their security
2 badges.  (Second Am. Compl. ¶ 16.)  Frequently, there is a line of employees entering the stock
3 room.  (Second Am. Compl. ¶ 16.)  Employees do not clock in until they are inside the stock
4 room, and spend 15-20 minutes going through the entry process before they clock in.  (Second
5 Am. Compl. ¶ 16.)  Employees must repeat the same process any time they leave the distribution
6 center for a lunch or rest break.  (Second Am. Compl. ¶ 16.)  Employees are not compensated for
7 this time.  (Second Am. Compl. ¶ 16.)

8      Any time an employee leaves the distribution center, they must return to their lockers,
9 return their tools and collect their personal belongings before going through the security
10 screenings required by Defendant.  (Second Am. Compl. ¶ 17.)  During the security screenings,
11 employees are searched.  (Second Am. Compl. ¶ 18.)  Often, employees must wait in long lines
12 while other employees are searched as they leave.  (Second Am. Compl. ¶ 18.)  Employees spend
13 15-20 minutes after clocking out to go through the security screening and are not compensated
14 for their time.  (Second Am. Compl. ¶ 20.)

15      Plaintiffs allege that the off-the-clock work described above causes employees to work
16 overtime, either extending their shifts more than eight hours per day or over forty hours per
17 week.  (Second Am. Compl. ¶ 21.)  Plaintiffs further allege that, in some instances, employees
18 reported to work, but were given no work to do or worked less than one half of their scheduled
19 shift, but did not receive reporting time pay.  (Second Am. Compl. ¶ 22.)  Plaintiffs further allege
20 that employees were not given timely, accurate and itemized wage statements.  (Second Am.
21 Compl. ¶ 23.)  Plaintiffs also allege that employees who quit their jobs with Defendant were not
22 given all wages owed to them within 72 hours of resignation or thirty days thereafter.  (Second
23 Am. Compl. ¶ 24.)

24      **B.**    **Terms of the Proposed Class Settlement**

25      The parties attended mediation on April 8, 2014.  At the mediation, the parties reached a
26 settlement.  Defendant agrees to pay $900,000.00 in cash to resolve the claims of any class
27 members who do not timely and validly opt out.  The $900,000.00 is paid by Defendant on a
28 non-reversionary basis.  The parties propose the following deductions from the $900,000.00

settlement figure:

- up to $10,000 to Ceja-Corona and $7,500 for Armenta for their services and participation as class representatives;
- up to $270,000 to Class Counsel for attorneys' fees and up to $15,000 for litigation costs;
- $7,500 to the California Labor and Workforce Development Agency ("LWDA") for penalties pursuant to Labor Code § 2699, et seq.;
- $30,700 for the costs of claims administration;
- Defendant's share of payroll taxes on the settlement awards.

Defendant's records show that there are approximately 2,273 class members in this action. The proposed settlement provides that an equitable formula will be applied to distribute the settlement funds to each participating class member based upon the number of workweeks the member has worked during the relevant time period. The settlement provides for a $50.00 guaranteed minimum payment for participating class members.

The parties propose the following timeline for settlement:

| Timing | Event |
|---|---|
| 20 calendar days after preliminary approval of settlement | Defendant provides Claims Administrator mailing addresses for Class Members |
| 30 calendar days after preliminary approval of settlement | Claims Administrator mails Notice Packet to Class Members |
| 45 calendar days after Claims Administrator mails to Class Members | Deadline for Class Members to submit Claim Forms, exclusion forms, or objections. |
| 28 days before final approval hearing | Plaintiff files Motion for Final Approval of Class Action Settlement |
| December 1, 2014 | Final Approval Hearing |

## II.

## LEGAL STANDARDS FOR APPROVAL OF CLASS SETTLEMENTS

Federal Rule of Civil Procedure 23(e) states:

>   (e) Settlement, Voluntary Dismissal, or Compromise. The claims, issues or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>   (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>   (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
>   (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
>   (4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.
>   (5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Rule 23 "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992)). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Id. (citing Officers for Justice v. Civil Serv. Comm'n of San Francisco, 688 F.2d 615, 628 (9th Cir. 1982)).

"Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." Hanlon, 150 F.3d at 1026 (citing Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993)). "To survive appellate review, the district court must show it has explored comprehensively all factors." Id.

Moreover:

>   Several circuits have held that settlement approval that takes place prior to formal class certification requires a higher standard of fairness. The dangers of collusion between class counsel and the

> defendant, as well as the need for additional protections when the settlement is not negotiated by a courtdesignated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e).... Because settlement class actions present unique due process concerns for absent class members, we agree with our sister circuits and adopt this standard as our own.

Hanlon, 150 F.3d at 1026.

## III.

## DISCUSSION

At the hearing, the Court discussed a number of apparent defects in the motion for preliminary approval of the class settlement. Accordingly, the Court will defer on making a recommendation on whether the motion should be granted or denied and require the parties to submit additional briefing on the issues outlined below.

Moreover, for the sake of clarity in the record, the Court will require any additional briefing submitted by the parties to be complete in and of itself, without reference to the previously filed motion for preliminary approval of the class action settlement. In other words, the Court will require the parties to file an amended motion so that any class members looking at the record will only need to review the newly filed amended motion, without having to refer back to the previously filed motion.

**A. California Class versus Nationwide Class**

At the hearing, the Court noted that the operative complaint in this action sought to certify two classes: a California class for the claims under California law and a Nationwide class for claims under the Fair Labor Standards Act. However, the proposed settlement only pertained to a class of California employees, as well as a separate class for PAGA claims. It was unclear how Nationwide Class members would be affected by the settlement.

At the hearing, the parties indicated that it was their intent that the settlement would only bind members of the California class and that Nationwide class members (who were not also members of the California class) would not be precluded from bringing their claims in a separate action. Moreover, the parties indicated that the settlement would resolve this action in its entirety, without addressing the claims brought by Nationwide class members outside California.

1  Accordingly, the Court will require the parties' amended motion to expressly acknowledge that
2  the claims brought on behalf of the Nationwide class members outside of California would
3  effectively be dismissed without prejudice as a result of this settlement.

### B. Class Certification

At the hearing, the Court noted that Plaintiffs' motion was largely boilerplate, without sufficient evidence to support certification of a class for settlement purposes. Accordingly, the Court will require the parties' amended motion to address the issues set forth below.

When the parties seek approval of a proposed class action settlement, the Court must "ascertain whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to all class actions, namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." Hanlon, 150 F.3d at 1019 (citing Amchem Products, Inc. v. Windsor, 521 U.S. 591, 613 (1997)). Courts "must pay 'undiluted, even heightened, attention' to class certification requirements in a settlement context." Id. (quoting Amchem Products, Inc., 521 U.S. at 620).

Additionally, Plaintiffs seek certification of a class under Federal Rule of Civil Procedure 23(b)(3), which requires a demonstration that questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Finally, the Court notes:

> Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficient numerous parties, common questions of law or fact, etc. We recognized in Falcon that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," [citation] and that certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied, [citation]."

Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) (italics in original). In other words, Plaintiffs' must *prove*, with supporting evidence, that the class certification requirements are met in this action.

As discussed in more detail below, Plaintiffs' motion lacks sufficient evidentiary support because it does not include any evidentiary support, other than a declaration from Plaintiffs' attorney.

1. Numerosity

The numerosity requirement is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs' motion for preliminary approval states that there are approximately 2,273 class members.

However, Plaintiffs' motion does not submit any evidence detailing how the 2,273 figure was calculated. The only evidence regarding the number of class members is the declaration of David Yeremian, the attorney for Plaintiffs. Mr. Yeremian only provides the vague statement that "There are approximately 2,273 Class Members." (Decl. of David Yeremian ¶ 30.) Mr. Yeremian provides no foundation as to how he reached this figure. At the hearing, the parties informed the Court that the 2,273 figure is likely outdated since it was calculated some time ago. The parties informed the Court that Defendant provided this figure, along with names and addresses, to the third party administrator to send notice out class members, but provides no insight as to how Defendant came up with this figure.

Accordingly, the Court will require any amended motion to include a declaration from a competent witness detailing how class members were identified and how their names and addresses were ascertained.

2. Commonality

The commonality requirement is satisfied where "there are questions of law or fact that are common to the class." Fed. R. Civ. P. 23(a)(2). However, "[a]ll questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Hanlon, 150 F.3d at 1019.

Again, Plaintiffs submit a vague declaration from Mr. Yeremian stating, in conclusory fashion, that the commonality requirement is met because all the class members were subject to the same employment policies and practices. Plaintiffs do not submit evidence establishing the

1 existence of commonality in this action.

2     "Commonality requires the plaintiff to demonstrate that the class members 'have suffered
3 the same injury.'"  Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) (quoting
4 General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 157 (1982)).  "This does not mean
5 merely that they have all suffered a violation of the same provision of law."  Id.  "Their claims
6 must depend upon a common contention.... That common contention, moreover, must be of such
7 a nature that it is capable of classwide resolution—which means that determination of its truth or
8 falsity will resolve an issue that is central to the validity of each of the claims in one stroke."  Id.

9     Plaintiffs argue that commonality exists because all class members suffered the same
10 injuries, namely unpaid wages, overtime and inaccurate wage statements.  However, this in and
11 of itself does not meet the standard set forth in Wal-Mart Stores, Inc., as Plaintiffs have not
12 identified any "common contention" that will resolve an issue central to the validity of each
13 claim.

14     At the hearing, the parties indicated that Defendant has two distribution centers in
15 California.  The parties state that the same security policies are in effect at both distribution
16 centers, but provide no evidentiary detail as to what these security policies entail and how they
17 caused or contributed to a common injury among all class members.  Accordingly, any amended
18 motion should include admissible evidence which establishes the "common contention"
19 connecting employees from both distribution centers to a shared injury.

20     Moreover, at the hearing, Plaintiff's conceded that their claims for unpaid reporting time
21 pay are largely unrelated to their claims based upon off-the-clock work associated with waiting
22 for security screenings.  Further, both parties indicated that the unpaid reporting time pay claims
23 were determined to be not as widespread and insubstantial.  Yet, settlement in this action
24 purports to bind all class members with respect to any potential unpaid reporting time pay claim
25 they may possess.  This outcome would unduly prejudice individual class members who may
26 possess valid and substantial claims for unpaid reporting time pay.  The Court is not inclined to
27 approve a settlement where the parties acknowledge that these reporting time claims were not
28 found to be an issue common to the class, yet individual class members would be required to

give up their right to pursue their claims. Accordingly, any amended motion should either amend the terms of the proposed settlement such that class members are not required to release these claims, or the parties should present persuasive arguments to the Court why it would be fair and equitable for class members to release a claim that was found not to be common to the class.

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" This does not require the claims to be substantially identical, but that the representatives claims be "reasonably co-extensive with those of the absent class members." Hanlon, 150 F.3d at 1020.

Plaintiffs vaguely argue that Plaintiff's claims are typical of the claims of the whole class. Notably, Plaintiffs' boilerplate brief makes no distinction between the claims of Plaintiff Leticia Ceja-Corona and the claims of Plaintiff Margarita Rubio Armenta. Furthermore, there is no admissible evidence regarding the facts of Ceja-Corona's claims or Armenta's claims. Any amended motion should include admissible evidence which demonstrates how Ceja-Corona's claims and Armenta's claims are typical to the claims or defenses of the remaining class members.

### 4. Adequacy of Representation

The named plaintiffs must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). In determining whether the named plaintiffs will adequately represent the class, the courts must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon, 150 F.3d at 1020. "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees. Ellis v. Costco Wholesale Corp., 657 F.3d 970, 985 (9th Cir. 2011) (citations omitted).

At this point in time, the Court does not see any issues regarding the adequacy of the named plaintiffs and their counsel, and therefore reserves any decision on this issue until after the parties file an amended motion.

5.     Predominance

"[T]he focus of the Rule 23(b)(3) predominance inquiry is on the balance between individual and common issues." Alberto v. GMRI, Inc., 252 F.R.D. 652, 663 (E.D. Cal. 2008). Where common questions present a significant aspect of the case and are able to be resolved for all class members in a single action, the case can be handled on a representative rather than individual basis. Alberto, 252 F.R.D. at 663.

For the same reasons discussed above, in the context of the issue of commonality, the Court notes that Plaintiffs have not identified any common policy that applies across all distribution centers. Further, the off-the-clock work claims and the reporting time pay claims asserted by Plaintiffs raise different factual issues which would require individualized assessment for each class member. Thus, it is unclear whether class issues predominate over the individual issues.

Further, the Court notes that the nature of Plaintiffs claims raises individualized inquiries as well. Plaintiffs claim that Defendant failed to pay employees for time spent waiting in employer mandated security lines. However, the amount of time waiting in line would necessarily vary from person to person. The first employee in line may not have a claim or may have a smaller claim that the last employee in line, who naturally would wait longer and thus be entitled to more damages. Further, the length of the line may vary at different times during the day, with longer lines and longer waits during busier times (such as at 9:00 a.m. or at 5:00 p.m.), and shorter lines and shorter waits during less busy times. Plaintiffs offer no insight as to how such issues could be resolved on a class-wide basis or how, in spite of these issues, the common class issues predominate over the individual issues. Accordingly, any amended motion should provide further support on the issue of predominance.

6.     Superiority

Rule 23(b)(3) provides that courts should consider "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

11

and (D) the likely difficulties in managing a class action." Where the parties have agreed to pre-certification settlement (D) and perhaps (C) are irrelevant. Amchem, 521 U.S. at 620.

Plaintiffs note that resolving each class members' claims on an individual basis would be uneconomical because each individual suit would be for a relatively small amount. However, Plaintiffs do not provide any evidence or argument regarding exactly how much each claim is worth for each individual member. While Plaintiffs' argument seems reasonable in theory, the Court must be given some insight as to how much off-the-work time was unpaid for the average class member in order to evaluate this argument. Moreover, Plaintiffs would have to demonstrate how much in damages, PAGA penalties, etc. an average class member would be entitled to if they brought an individual claim. Accordingly, any amended motion should provide concrete numbers which demonstrate that the value of each individual's claim is so low that individual claims would be uneconomical.

**C.    Whether the Proposed Settlement is Fundamentally Fair, Adequate, and Reasonable**

Plaintiffs must demonstrate that the proposed settlement is fundamentally fair, adequate, and reasonable. Hanlon, 150 F.3d at 1026 (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992)). "Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." Hanlon, 150 F.3d at 1026 (citing Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993)).

Plaintiffs' boilerplate motion does not adequately address these factors. First, the Court notes that there is little discussion regarding the strength of Plaintiffs' case. Plaintiffs' have not discussed what evidence, if any, is in their possession. Although Plaintiffs identify a single favorable case regarding compensation for off-the-time work associated with employer mandated security clearances, Plaintiffs provide little discussion of the facts specific to this case.

1    Second, there is no indication of the risk, expense, complexity or likely duration of
2 further litigation, or the risk of maintaining class action status throughout trial. It is unclear how
3 much discovery has been completed.

4    Third, the Court notes that the proposed settlement provides for a payment of $7,500 to
5 the California Labor and Workforce Development Agency ("LWDA") for PAGA penalties
6 pursuant to Labor Code § 2699, et seq. However, Plaintiffs provide no justification for this
7 amount. Thus, the $7,500 figure appears to be largely arbitrary and bears no relationship to the
8 total amount of settlement. The Court notes that California Labor Code § 2699(l) requires court
9 approval of any settlement of a PAGA claim. The Court further notes that, generally, the
10 settlement of PAGA claims is ripe for collusion between a class of plaintiffs and a defendant, as
11 neither party has any incentive to increase the amount awarded to the LWDA. In an amended
12 motion, the parties are expected to demonstrate the basis of the $7,500. For example, the parties
13 could provide the Court with an estimate of the maximum total damages that would be awarded
14 to Plaintiffs if they prevail on all the claims, and calculate what percentage of that total award
15 would be attributable to PAGA penalties. Alternatively, the parties may submit a reasonable
16 proposal whereby notice is given to the LWDA of the terms of the proposed settlement, with the
17 LWDA given a chance to object to the terms of the settlement of the PAGA claim.

18    Moreover, the Court notes that the proposed class notice references "an equitable
19 formula" where each member receives an amount proportional to the number of workweeks she
20 or he worked for Defendant compared to all the weeks worked by all class members. Based
21 upon the Joint Stipulation of Class Action Settlement and Release, this equitable formula divides
22 the number of weeks worked by an individual class member by the number of weeks worked by
23 all class members to determine the percentage of the total settlement that the individual class
24 member should receive. The Court notes that the number of weeks worked is not precisely
25 proportional to the amount each individual is entitled to, as someone who works full time each
26 week may be entitled to a greater settlement payment than someone who worked a few days each
27 week for the same period of time. Further, this formula does not appear to take into account any
28 differences in the hourly rate of pay that may exist between class members.

1  Similarly, it is unclear how the "equitable formula" takes into account the sums paid out
2  associated with Plaintiffs' claim based upon reporting-time pay. It is unclear how the sums owed
3  for claims based upon being sent home early without reporting time pay can be calculated using
4  only the number of weeks worked by each individual class member.

5  Further, the Court notes that Plaintiffs have not introduced any evidence or argument
6  regarding the adequacy of the settlement. Plaintiffs only state, in boilerplate fashion, that the
7  settlement was reached after extensive negotiations. "To determine whether a settlement falls
8  within the range of possible approval, a court must focus on substantive fairness and adequacy,
9  and "consider plaintiffs' expected recovery balanced against the value of the settlement offer."
10 Lusby v. Gamestop, Inc., 297 F.R.D. 400, 415 (N.D. Cal. 2013) (quoting In re Tableware
11 Antitrust Litig., 484 FSupp.2d 1078, 1080 (N.D. Cal. 2007)). Plaintiffs have not provided any
12 indication of what Plaintiffs' expected recovery would be if they prevailed on the merits.
13 Plaintiffs has not introduced evidence of the total amount of off-the-clock work that was unpaid
14 by Defendant for all class members. The Court also notes that Plaintiffs have provided little
15 justification for the enhancement payment to Ceja-Corona and Armenta ($10,000 and $7,500,
16 respectively). Plaintiffs have not provided any specifics regarding the amount of time each
17 devoted to the case, nor any discrete evidence of retaliation from prospective employers. This,
18 combined with the lack of any detailed analysis of the strength of the merits of Plaintiffs' case,
19 makes it impossible for the Court to evaluate whether the $900,000 settlement figure is within
20 the range of what would be regarded as fair and adequate.

21 Moreover, the Court notes that the settlement is described as non-reversionary, yet the
22 settlement funds not claimed by class members are to be forwarded to a "CVS Caremark
23 Employee Relief Fund." Plaintiffs provide no insight as to what this fund is, or what benefit it
24 provides to the class.

25 Finally, the Court notes that Plaintiffs request "up to 30%" in attorneys' fees. It is
26 unclear what is meant by "up to" and the Court assumes that Plaintiffs will be requesting 30%.
27 In the Ninth Circuit, courts typically calculate 25% of the common fund as the "benchmark" for
28 a reasonable fee award providing adequate explanation in the record for any special

circumstances that justify departure. In re Bluetooth Headset Products Liability Litigation, 654 F.3d 935, 942 (9th Cir. 2011). Plaintiffs have not demonstrated justification to depart higher than 25%, particularly in light of the relatively early stage of this action, where settlement was reached prior to class certification. If Plaintiffs wish to request a departure from 25%, the Court will require Plaintiffs to submit evidence of the actual number of hours worked in this action to determine whether a departure from the benchmark of 25% is warranted.

Based upon the foregoing, the Court will require the parties to submit an amended motion which addresses the issues outlined above.

### IV.
### CONCLUSION AND ORDER

Based upon the foregoing, the Court will order the parties to submit an amended motion for preliminary approval of class action settlement which addresses the issues outlined above. The parties' amended motion shall be completed in and of itself without reference to the prior motion for preliminary approval of class action settlement.

Accordingly, it is HEREBY ORDERED that:

1. The parties shall file an amended motion addressing the issues outlined in this order on or before October 15, 2014; and

2. A continued hearing on the motion for preliminary approval of the class settlement shall take place on Wednesday, October 29, 2014 at 10:00 a.m. in Courtroom 9 (SAB) before United States Magistrate Judge Stanley A. Boone.

IT IS SO ORDERED.

Dated:  **September 11, 2014**

UNITED STATES MAGISTRATE JUDGE