# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LETICIA CEJA-CORONA, et al., | Case No.  1:12-cv-01868-AWI-SAB |
| Plaintiffs, | FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT BE DENIED |
| v. | |
| CVS PHARMACY, INC., | |
| Defendant. | ECF NO. 48, 55 |
| | OBJECTIONS DUE WITHIN FOURTEEN DAYS |

On July 30, 2014, Plaintiffs Leticia Ceja-Corona and Margarita Rubio Armenta, on behalf of themselves and others similarly situated (hereinafter collectively referred to as "Plaintiffs"), filed a motion for preliminary approval of a class action settlement.  (ECF No. 48.)  After an initial hearing on September 10, 2014, an amended motion was filed on October 22, 2014.  (ECF No. 55.)  Plaintiffs' motion is unopposed.

The motion referred to the undersigned magistrate judge for findings and recommendations pursuant to 28 U.S.C. § 636(b).  The hearing on Plaintiffs' amended motion took place on October 29, 2014.  David Yeremian appeared in person on behalf of Plaintiffs.  Michelle Taylor appeared telephonically on behalf of Defendants.

For the reasons set forth below, the Court recommends that the motion for preliminary approval be denied.

# I.

# BACKGROUND

### A.    Allegations in the Operative Complaint

The operative complaint in this action is the Second Amended Complaint filed on February 26, 2014. (ECF No. 45.) Plaintiffs' complaint raises six causes of action: 1) for failure to pay minimum wages and overtime, 2) for failure to provide reporting time pay, 3) for failing to provide accurate earnings statements, 4) for failure to timely pay wages upon termination, 5) for unfair competition under California Business & Professions Code § 17200, and 6) for failure to pay wages and overtime for off-the-clock work, and 7) for penalties under California's Private Attorney's General Act, California Labor Code § 2699.

Plaintiffs Leticia Ceja-Corona and Margarita Rubio Armenta were employed by Defendant CVS Pharmacy, Inc. ("Defendant") in the County of Stanislaus in California. (Second Am. Compl. ¶ 2.) Plaintiffs originally brought this action on behalf of two classes: first, on behalf of all persons who are or have been employed by Defendant at distribution centers as nonexempt hourly employees in the State of California at any time four years prior to the filing of this lawsuit and continuing on to the present. (Second Am. Compl. ¶ 27.) The second class consists of all persons who are or have been employed by Defendant at distribution centers as nonexempt hourly employees at any time three (3) years prior to the filing of this lawsuit and continuing to the present and who elect to opt into this action. (Second Am. Compl. ¶ 27.)

Plaintiffs allege that Defendant failed to pay Plaintiffs all wages, overtime, and reporting time pay due under the California Labor Code, the applicable California Industrial Welfare Commission Wage Orders, and the Fair Labor Standards Act. (Second Am. Compl. ¶ 10.) Plaintiffs allege that, prior to clocking in for the day, they must gain admittance into distribution centers using security badges that are swiped before passing through turnstiles. (Second Am. Compl. ¶ 14.) After entering the facility, employees must deposit their personal belongings in lockers because Defendant's policy prohibits employees from taking personal belongings into areas where merchandise is stored. (Second Am. Compl. ¶ 15.) While at their lockers, employees must also collect the tools they use to perform their job duties. (Second Am. Compl.

1  ¶ 15.)  Employees then walk to the stock room, which requires employees to swipe their security
2  badges.  (Second Am. Compl. ¶ 16.)  Frequently, there is a line of employees entering the stock
3  room.  (Second Am. Compl. ¶ 16.)  Employees do not clock in until they are inside the stock
4  room, and spend 15-20 minutes going through the entry process before they clock in.  (Second
5  Am. Compl. ¶ 16.)  Employees must repeat the same process any time they leave the distribution
6  center for a lunch or rest break.  (Second Am. Compl. ¶ 16.)  Employees are not compensated for
7  this time.  (Second Am. Compl. ¶ 16.)

8        Any time an employee leaves the distribution center, they must return to their lockers,
9  return their tools and collect their personal belongings before going through the security
10 screenings required by Defendant.  (Second Am. Compl. ¶ 17.)  During the security screenings,
11 employees are searched.  (Second Am. Compl. ¶ 18.)  Often, employees must wait in long lines
12 while other employees are searched as they leave.  (Second Am. Compl. ¶ 18.)  Employees spend
13 15-20 minutes after clocking out to go through the security screening and are not compensated
14 for their time.  (Second Am. Compl. ¶ 20.)

15       Plaintiffs allege that the off-the-clock work described above causes employees to work
16 overtime, either extending their shifts more than eight hours per day or over forty hours per
17 week.  (Second Am. Compl. ¶ 21.)  Plaintiffs further allege that, in some instances, employees
18 reported to work, but were given no work to do or worked less than one half of their scheduled
19 shift, but did not receive reporting time pay.  (Second Am. Compl. ¶ 22.)  Plaintiffs further allege
20 that employees were not given timely, accurate and itemized wage statements.  (Second Am.
21 Compl. ¶ 23.)  Plaintiffs also allege that employees who quit their jobs with Defendant were not
22 given all wages owed to them within 72 hours of resignation or thirty days thereafter.  (Second
23 Am. Compl. ¶ 24.)

24       **B.**    **Terms of the Proposed Class Settlement**

25       Under the terms of the proposed settlement, Defendant agrees to pay $900,000.00 in cash
26 to resolve the claims of any class members who do not timely and validly opt out.  The
27 $900,000.00 is paid by Defendant on a non-reversionary basis.  The parties propose the
28 following deductions from the $900,000.00 settlement figure:

- up to $10,000 to Ceja-Corona and $7,500 for Armenta for their services and participation as class representatives;
- up to $270,000 to Class Counsel for attorneys' fees and up to $15,000 for litigation costs;
- $7,500 to the California Labor and Workforce Development Agency ("LWDA") for penalties pursuant to Labor Code § 2699, et seq.; and
- $30,700 for the costs of claims administration.

The parties seek to approve two classes for purposes of settlement. The first class, the "California Claims Class," is defined as:

> All persons who are or have been employed by CVS at distribution centers as nonexempt, hourly employees in the State of California at any time from October 9, 2008 through the Court's preliminary approval of this Settlement or July 7, 2014, whichever occurs first.

Since July 7, 2014 has already passed, the Court presumes that the July 7, 2014 cut-off date applies for class members.

The second class, the "PAGA Claims Class," is defined as:

> All persons who are or have been employed by CVS at distribution centers as nonexempt, hourly employees in the State of California at any time from February 26, 2013 through the Court's preliminary approval of this Settlement, or July 7, 2014, whichever occurs first.

The parties report that the California Claims Class consists of 2,270 people and the PAGA Claims Class consists of 1,759 people.

The proposed settlement provides that a formula will be applied to distribute the settlement funds to each participating class member based upon the number of wages the member worked during the relevant time period. The wages earned by an individual member during the relevant time period will be divided by the aggregated total wages of all members during the relevant time period to determine the percentage of the settlement pool that the individual member will receive. Any remaining funds in the settlement pool will be transferred to a charity, the CVS Health Employee Relief Fund.

/ / /

/ / /

4

The parties propose the following timeline for settlement:

| Timing | Event |
|---|---|
| 20 calendar days after preliminary approval of settlement | Defendant provides Claims Administrator mailing addresses for Class Members |
| 30 calendar days after preliminary approval of settlement | Claims Administrator mails Notice Packet to Class Members |
| 45 calendar days after Claims Administrator mails to Class Members | Deadline for Class Members to submit Claim Forms, exclusion forms, or objections. |
| 28 days before final approval hearing | Plaintiff files Motion for Final Approval of Class Action Settlement |
| February 18, 2014 | Final Approval Hearing |

## II.

## LEGAL STANDARDS FOR APPROVAL OF CLASS SETTLEMENTS

Federal Rule of Civil Procedure 23(e) states:

> (e) Settlement, Voluntary Dismissal, or Compromise. The claims, issues or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
> (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
> (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
> (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
> (4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.
> (5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Rule 23 "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026

1 (9th Cir. 1998) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992)). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Id. (citing Officers for Justice v. Civil Serv. Comm'n of San Francisco, 688 F.2d 615, 628 (9th Cir. 1982)).

"Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." Hanlon, 150 F.3d at 1026 (citing Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993)). "To survive appellate review, the district court must show it has explored comprehensively all factors." Id.

Moreover:

> Several circuits have held that settlement approval that takes place prior to formal class certification requires a higher standard of fairness. The dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e).... Because settlement class actions present unique due process concerns for absent class members, we agree with our sister circuits and adopt this standard as our own.

Hanlon, 150 F.3d at 1026.

**III.**

**DISCUSSION**

**A. California Class versus Nationwide Class**

As an initial matter, the Court notes that the operative complaint in this action sought to certify a Nationwide Class for claims under the Fair Labor Standards Act. However, the amended motion for preliminary approval indicates that the present settlement does not seek relief for claims brought on behalf of the Nationwide Class and would not preclude Nationwide Class members (who are not members of the California Claims Class or the PAGA Claims

6

Class) from bringing those claims in a separate action. The settlement in this action effectively dismisses without prejudice the claims brought in the operative complaint on behalf of Nationwide Class members who are not members of the California Claims Class or the PAGA Claims Class.

### B. Class Certification

When the parties seek approval of a proposed class action settlement, the Court must "ascertain whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to all class actions, namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." Hanlon, 150 F.3d at 1019 (citing Amchem Products, Inc. v. Windsor, 521 U.S. 591, 613 (1997)). Courts "must pay 'undiluted, even heightened, attention' to class certification requirements in a settlement context." Id. (quoting Amchem Products, Inc., 521 U.S. at 620).

Additionally, Plaintiffs seek certification of a class under Federal Rule of Civil Procedure 23(b)(3), which requires a demonstration that questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Finally, the Court notes:

> Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficient numerous parties, common questions of law or fact, etc. We recognized in Falcon that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," [citation] and that certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied, [citation]."

Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) (italics in original). In other words, Plaintiffs' must *prove*, with supporting evidence, that the class certification requirements are met in this action.

///

///

1.     Numerosity

The numerosity requirement is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs' motion for preliminary approval establishes that there are 2,270 members in the California Claims Class and 1,759 members in the PAGA Claims Class. The Court finds that these classes are sufficiently numerous.

2.     Commonality

The commonality requirement is satisfied where "there are questions of law or fact that are common to the class." Fed. R. Civ. P. 23(a)(2). However, "[a]ll questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Hanlon, 150 F.3d at 1019.

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) (quoting General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 157 (1982)). "This does not mean merely that they have all suffered a violation of the same provision of law." Id. "Their claims must depend upon a common contention.... That common contention, moreover, must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." Id.

The Court finds that commonality exists with respect to <u>some</u> of the claims asserted by Plaintiffs. Specifically, commonality exists with respect to the claims based upon Defendant's security check policy and unpaid wages for off-the-clock time spent going through security checks. The amended motion states that class members are employed at two distributions in California, one in the city of Patterson and the other in La Habra. Employees at both distribution centers are subjected to the same security policy which provides for random inspections of employees to ensure that employees are not stealing inventory. Employees at both distribution centers are required to go through a security check where guards check purses, bags, and lunch

1  bags for stolen inventory.  Plaintiff contends that this policy raises a common contention among
2  all class members regarding whether class members should have been compensated for their time
3  undergoing these security checks.

4  However, the parties concede that Plaintiffs' reporting time claims do not meet the
5  commonality requirement.  Plaintiffs' complaint raised a claim based upon the contention that
6  class members were sent home early from their scheduled shifts without compensation owed
7  under the California Labor Code and the applicable Industrial Wage Commission Wage Order.
8  However, the parties admit that no common contention existed because it was "nearly impossible
9  to identify the days where this practice took place" and "not every Class Member was sent home
10 early or volunteered to go."  (Am. Mem. of P. & A. in Supp. of Mot. for Order for Prelim.
11 Approv. of Class Action Settlement 18:1-6.)  Further, the parties admit that the reporting time
12 claims are both legally and factually unrelated to the claims based upon the security check
13 policy.  The fact that some employees were sent home early was unrelated to the fact that
14 employees spent off-the-clock time going through security checks.

15 At the hearing, the parties informed the Court that the settlement reached in this action is
16 contingent upon the release of the reporting time claims on a class-wide basis.  However, the
17 inclusion of the reporting time claims destroys the existence of commonality among the class
18 members and their claims.  While commonality may exist among the class if the only claims
19 being resolved were limited to those related to the off-the-clock time spent in security checks, the
20 parties' attempt to bootstrap the reporting time claims means there is no longer a single
21 contention that will resolve an issue central to each of the claims in one stroke.  Accordingly,
22 class certification is inappropriate with respect to a class that includes claims relating to reporting
23 time in this action.  For this reason, class certification is inappropriate and the motion for
24 preliminary approval should be denied.

25 3.  Typicality

26 Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical
27 of the claims or defenses of the class[.]"  This does not require the claims to be substantially
28 identical, but that the representatives claims be "reasonably co-extensive with those of the absent

class members." Hanlon, 150 F.3d at 1020.

The amended motion demonstrates that the claims of Plaintiffs Leticia Ceja-Corona and Margarita Rubio Armenta are typical to the claims of the class. Both named plaintiffs worked at the Patterson Distribution Center, was subjected to security checks, and was not compensated for her time spent going through security checks.

### 4. Adequacy of Representation

The named plaintiffs must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). In determining whether the named plaintiffs will adequately represent the class, the courts must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon, 150 F.3d at 1020. "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees. Ellis v. Costco Wholesale Corp., 657 F.3d 970, 985 (9th Cir. 2011) (citations omitted).

At the stage, the Court is satisfied with Plaintiffs' demonstration that they will adequately represent the class.

### 5. Predominance

"[T]he focus of the Rule 23(b)(3) predominance inquiry is on the balance between individual and common issues." Alberto v. GMRI, Inc., 252 F.R.D. 652, 663 (E.D. Cal. 2008). Where common questions present a significant aspect of the case and are able to be resolved for all class members in a single action, the case can be handled on a representative rather than individual basis. Alberto, 252 F.R.D. at 663.

For the same reasons discussed above, in the context of the issue of commonality, the Court finds that Plaintiffs have adequately demonstrated predominance with respect to the claims related to off-the-clock time spent going through security checks, but have not demonstrated predominance with respect to the reporting time claims. See discussion, supra, Part III.B.2.

///

///

6. <u>Superiority</u>

Rule 23(b)(3) provides that courts should consider "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Where the parties have agreed to pre-certification settlement (D) and perhaps (C) are irrelevant. <u>Amchem</u>, 521 U.S. at 620.

Plaintiffs note that resolving each class members' claims on an individual basis would be uneconomical because each individual suit would be for a relatively small amount. Given the small value for each individual claim, class members would have little interest in individually controlling the prosecution or defense of separate actions. At this stage, the Court is unaware of any other litigation underway concerning the conduct at issue. Accordingly, the Court finds that a class action is superior to other means of resolution, at least with respect to the claims related to off-the-clock time spent in security checks.

**C.     Whether the Proposed Settlement is Fundamentally Fair, Adequate, and Reasonable**

Plaintiffs must demonstrate that the proposed settlement is fundamentally fair, adequate, and reasonable. <u>Hanlon</u>, 150 F.3d at 1026 (citing <u>Class Plaintiffs v. City of Seattle</u>, 955 F.2d 1268, 1276 (9th Cir. 1992)). "Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." <u>Hanlon</u>, 150 F.3d at 1026 (citing <u>Torrisi v. Tucson Elec. Power Co.</u>, 8 F.3d 1370, 1375 (9th Cir. 1993)).

While the Court is generally satisfied with the parties' analysis regarding the strength of Plaintiffs' case, the risk, expense, complexity, and likely duration of further litigation, the risk of maintaining class action status, etc., there are a few discrete factors regarding the terms of the

settlement that the Court finds fundamentally unfair or unreasonable.

1.  <u>Release of the Reporting Time Claims Would Be Fundamentally Unfair to Individual Class Members Who Possess Valid Reporting Time Claims</u>

The Court notes that, under the terms of the proposed settlement, the reporting time claims of individual class members are being settled on a class-wide basis despite the fact that the parties acknowledge that such claims are not amenable to class treatment because they lack commonality. Plaintiffs admit that these claims have little value to the class as a whole. However, at the hearing, the parties informed the Court that the settlement in this action was contingent upon the settlement of the reporting time claims. Thus, the reporting time claims have some value. Plaintiffs' admission that the reporting time claims have little value <u>to the class</u> underscores the fundamental unfairness of any settlement that resolves these reporting time claims on a class-wide basis.

The release of the reporting time claims has some significant value to Defendant, since the parties informed the Court that settlement is contingent upon the release of the reporting time claims. The reporting time claims may have little value from the perspective of the class as a whole because they are not amenable to class treatment, but they have some value to Defendant and some value to the individual class members who may possess valid reporting time claims. It would be fundamentally unfair to resolve these claims on a class-wide basis if these claims bring little value to the class as a whole, but deprive certain individual class members of reporting time claims that may have some value on an individual basis. In other words, settlement of the reporting time claims requires a select subset of individuals to release their reporting time claims despite bringing little value to the class as a whole.

Moreover, the inclusion of the reporting time claims in a settlement would only serve to cause confusion, since they are so unrelated to the claims regarding the off-the-clock time spent at security checks. Class members receiving notice of the settlement may not realize that they are giving up their rights to any reporting time claims if they assume that this action is solely related to the security check claims. Notably, the proposed notice of class action settlement contributes to this confusion, as it makes no mention of reporting time claims in the section titled

"Nature of the Lawsuit."[1]

Even if the class notice were amended to include additional language regarding the reporting time claims, the Court finds that it would still cause confusion. The main crux of the class claims in this action is based upon the off-the-clock time spent in security checks. The reporting time claims are factually and legally unrelated. Class members receiving notice would likely be confused as to why they would be giving up their right to bringing reporting time claims in an action that is predominantly concerned with off-the-clock time spent in security checks.

The Court finds that the release of the reporting time claims is fatal to the parties' settlement. The parties' attempt to settle these claims is potentially collusive in nature. Defendant benefits from the release of the reporting time claims because it resolves a large number of claims among a large number of individuals in one stroke. Plaintiffs' counsel and class members who do not possess reporting time claims would benefit from the release of the reporting time claims because it provided Defendant with an incentive to settle, which translated into a larger settlement number for the class and for the percentage reserved for attorneys' fees. However, individual class members who possess reporting time claims are unduly burdened by releasing these claims for the benefit of Defendant, Plaintiffs' counsel, and other class members who are not releasing reporting time claims. Accordingly, the settlement terms are

---

[1] The proposed notice states:

> III.   Nature of the Lawsuit
> In this case, Plaintiffs sued CVS for damages for nonpayment of wages, including overtime premiums, for hours worked off the clock primarily while passing through security checks and for interest and penalties resulting from these violations. Plaintiffs additionally sued CVS for civil penalties for various violations of the California Labor Code, as permitted by the Private Attorneys General Act of 2004, Lab. Code § 2699 et seq. ("PAGA"). CVS denied and continues to deny all of the allegations made by Plaintiffs.
> Plaintiffs and CVS tentatively settled this law suit. The Settlement received preliminary approval of the Court, subject to notice being provided to the members of the Classes and final approval by the Court after a public hearing. This proposed Settlement is described in the next section of this notice.
> If you are a member of either of the Certified Classes established by the court, you will receive such benefits, if any, as you may qualify for under the proposed Settlement. If the proposed Settlement is not approved, then the offer of settlement will be deemed withdrawn, and the case will proceed in Court as if no settlement agreement had ever been reached.

fundamentally unfair and the Court will recommend that the motion for preliminary approval be denied.

### 2. The Parties Offer No Justification for the Apportionment of PAGA Penalties

The claims brought in this action include claims under California's Private Attorneys Generals Act ("PAGA"). Civil penalties recovered under PAGA are distributed between the aggrieved employees (25%) and the California Labor and Workforce Development Agency ("LWDA") (75%). Cal. Labor Code § 2699(i). Any settlement of PAGA claims must be approved by the Court. Cal. Labor Code § 2699(l).

The terms of the settlement involves a $900,000 payment from Defendant. Of this $900,000 sum, the parties apportion only $10,000 toward the PAGA claims, resulting in a $7,500 payment to the LWDA. The parties offer no reasoned basis for the calculation of this apportionment, other than that, in Plaintiffs' counsel's experience, the apportionment is in line with other settlements approved by other courts in PAGA matters.

In this case, Plaintiffs submitted a declaration wherein they provided the Court with Plaintiffs' counsel's opinion regarding the value of their claims, including the PAGA claims. Plaintiffs indicate that the "maximum value" of the underlying wage claims is $8,799,333, not including PAGA penalties. (Am. Decl. of David Yeremian in Supp. of Mot. for Order for Prelim. Approval of Class Action Settlement ¶ 14a.) Plaintiffs also estimated the maximum potential recovery under PAGA to be $7.5 million. (Id. at ¶ 14c.) Plaintiffs' estimated the "realistic" potential recovery under PAGA would be $1-2 million.[2] (Id.)

Given the fact that the PAGA claims account for approximately 20% of the "maximum value" of the claims in this action, it does not seem reasonable that only 1% of the settlement is apportioned toward the PAGA claims. The arbitrary apportionment prejudices two sets of parties. First, the LWDA is arguably deprived of their fair share of the settlement proceeds. Second, members of the PAGA Claims Class are arguably deprived of their fair share of the

---

[2] While Plaintiffs provided a "realistic" recovery number to deflate number associated with PAGA penalties, it is unclear why the Court would compare the $1-2 million "realistic" figure to the $8,799,333 "maximum" figure associated with the wage claims. Comparing the two "maximum" figures yields a ratio between the value of the wage claims and the PAGA penalties closer to 50-50, as opposed to the smaller ratio between the "maximum" wage claim recovery versus the "realistic" PAGA claims recovery.

1 settlement proceeds. If the PAGA claims account for 20% of the value of all the claims brought
2 in this action, it would stand to reason that members of the California Claims Class who are not
3 members of the PAGA Claims Class should receive a payment that is 20% less than the amount
4 received by individuals who are members of both classes. Thus, the proposed settlement does
5 not appear to fairly distribute settlement funds among the class members or the LWDA.

6   At the hearing, upon the Court's inquiry, the parties considered settlement terms whereby
7 the LWDA is given formal notice of the terms of the settlement, including the proposed
8 apportionment of monetary damages between PAGA claims and non-PAGA claims, and an
9 opportunity to object to the settlement. While this may remedy this particular defect in the
10 settlement, the parties have not presented this proposal to the Court in response to its analysis
11 and therefore the Court need not resolve this issue at this time.

12   3.   <u>Plaintiffs' Counsel's Request for 30% in Attorneys' Fees</u>

13   Plaintiffs' counsel requests that 30% of the settlement proceeds be paid as attorneys' fees.
14 The Court ordered Plaintiffs' to submit argument in the amended motion to preliminarily
15 approve settlement addressing why the Court should depart from the "benchmark" reasonable fee
16 of 25%. <u>See</u> <u>In re Bluetooth Headset Products Liability Litigation</u>, 654 F.3d 935, 942 (9th Cir.
17 2011). The Court noted that settlement in this action was reached relatively early, prior to class
18 certification. This case was filed in November 2012, meaning only approximately two years has
19 passed since filing.

20   Plaintiffs' submission does not identify any extraordinary circumstances justifying a
21 departure from the 25% benchmark. Further, despite the fact that the Court previously informed
22 Plaintiffs that it "will require Plaintiffs to submit evidence of the actual number of hours worked
23 in this action to determine whether a departure from the benchmark of 25% is warranted," (Order
24 Req. Add'l Briefing on Pls.' Mot. for Prelim. Approval of Class Settlement 15:4-6.) Plaintiffs
25 did not submit evidence of the precise number of hours worked and instead only vaguely
26 informed the Court that "several hundreds" of hours of work were performed by Plaintiffs'
27 attorneys. Even factoring the "several hundreds" of hours worked by Plaintiff, the Court finds
28 Plaintiffs have not demonstrated that a departure from the 25% benchmark is warranted.

For the foregoing reasons, the Court finds that the parties have failed to adequately demonstrate that the settlement reached in this action is fundamentally fair, and will recommend that the motion to preliminarily approve the settlement be denied.

## IV.

## CONCLUSION AND RECOMMENDATION

For the reasons set forth above, the Court finds that the proposed settlement is improper because class certification is inappropriate due to the inclusion of the reporting time claims and because the terms of the settlement are fundamentally unfair to certain class members and the LWDA.

Accordingly, it is HEREBY RECOMMENDED that the motion for preliminary approval of the class action settlement be DENIED.

These Findings and Recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen (14) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **October 30, 2014**

UNITED STATES MAGISTRATE JUDGE