# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LETICIA CEJA-CORONA, et al., | Case No. 1:12-cv-01868-AWI-SAB |
| Plaintiffs, | FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT BE GRANTED |
| v. | |
| CVS PHARMACY, INC., | |
| Defendant. | ECF NO. 66 |
| | OBJECTIONS DUE WITHIN FOURTEEN (14) DAYS |

On December 12, 2014, Plaintiff Leticia Ceja-Corona and Margarita Rubio Armenta, on behalf of themselves and others similarly situated (hereinafter collectively referred to as "Plaintiffs"), filed a motion for preliminary approval of a class action settlement. (ECF No. 66.) Plaintiffs' motion is unopposed.

The motion was referred to the undersigned magistrate judge for findings and recommendations pursuant to 28 U.S.C. § 636(b). (ECF No. 67.) The hearing on Plaintiffs' amended motion took place on January 14, 2015. David Yeremian appeared in person on behalf of Plaintiffs. Jody Landry appeared on behalf of Defendant CVS Pharmacy, Inc. ("Defendant" or "CVS").

For the reasons set forth below, the Court recommends that the motion for preliminary approval be granted.

1

# I.

# BACKGROUND

### A. Allegations in the Operative Complaint

The operative complaint in this action is the Second Amended Complaint filed on February 26, 2014. (ECF No. 45.) Plaintiffs' complaint raises six causes of action: 1) for failure to pay minimum wages and overtime, 2) for failure to provide reporting time pay, 3) for failing to provide accurate earnings statements, 4) for failure to timely pay wages upon termination, 5) for unfair competition under California Business & Professions Code § 17200, and 6) for failure to pay wages and overtime for off-the-clock work, and 7) for penalties under California's Private Attorney's General Act, California Labor Code § 2699.

Plaintiffs Leticia Ceja-Corona and Margarita Rubio Armenta were employed by Defendant CVS Pharmacy, Inc. ("Defendant") in the County of Stanislaus in California. (Second Am. Compl. ¶ 2.) Plaintiffs originally brought this action on behalf of two classes: first, on behalf of all persons who are or have been employed by Defendant at distribution centers as nonexempt hourly employees in the State of California at any time four years prior to the filing of this lawsuit and continuing on to the present. (Second Am. Compl. ¶ 27.) The second class consists of all persons who are or have been employed by Defendant at distribution centers as nonexempt hourly employees at any time three (3) years prior to the filing of this lawsuit and continuing to the present and who elect to opt into this action. (Second Am. Compl. ¶ 27.)

Plaintiffs allege that Defendant failed to pay Plaintiffs all wages, overtime, and reporting time pay due under the California Labor Code, the applicable California Industrial Welfare Commission Wage Orders, and the Fair Labor Standards Act. (Second Am. Compl. ¶ 10.) Plaintiffs allege that, prior to clocking in for the day, they must gain admittance into distribution centers using security badges that are swiped before passing through turnstiles. (Second Am. Compl. ¶ 14.) After entering the facility, employees must deposit their personal belongings in lockers because Defendant's policy prohibits employees from taking personal belongings into areas where merchandise is stored. (Second Am. Compl. ¶ 15.) While at their lockers, employees must also collect the tools they use to perform their job duties. (Second Am. Compl.

¶ 15.) Employees then walk to the stock room, which requires employees to swipe their security badges. (Second Am. Compl. ¶ 16.) Frequently, there is a line of employees entering the stock room. (Second Am. Compl. ¶ 16.) Employees do not clock in until they are inside the stock room, and spend 15-20 minutes going through the entry process before they clock in. (Second Am. Compl. ¶ 16.) Employees must repeat the same process any time they leave the distribution center for a lunch or rest break. (Second Am. Compl. ¶ 16.) Employees are not compensated for this time. (Second Am. Compl. ¶ 16.)

Any time an employee leaves the distribution center, they must return to their lockers, return their tools and collect their personal belongings before going through the security screenings required by Defendant. (Second Am. Compl. ¶ 17.) During the security screenings, employees are searched. (Second Am. Compl. ¶ 18.) Often, employees must wait in long lines while other employees are searched as they leave. (Second Am. Compl. ¶ 18.) Employees spend 15-20 minutes after clocking out to go through the security screening and are not compensated for their time. (Second Am. Compl. ¶ 20.)

Plaintiffs allege that the off-the-clock work described above causes employees to work overtime, either extending their shifts more than eight hours per day or over forty hours per week. (Second Am. Compl. ¶ 21.) Plaintiffs further allege that, in some instances, employees reported to work, but were given no work to do or worked less than one half of their scheduled shift, but did not receive reporting time pay. (Second Am. Compl. ¶ 22.) Plaintiffs further allege that employees were not given timely, accurate and itemized wage statements. (Second Am. Compl. ¶ 23.) Plaintiffs also allege that employees who quit their jobs with Defendant were not given all wages owed to them within 72 hours of resignation or thirty days thereafter. (Second Am. Compl. ¶ 24.)

### B. Prior Motions for Preliminary Approval

Plaintiffs previously filed a motion for preliminary approval of class action settlement on July 30, 2014. (ECF No. 48.) An amended motion was filed on October 22, 2014. (ECF No. 55.) On October 30, 2014, the undersigned magistrate judge issued a findings and recommendations which recommended that the motion be denied. (ECF No. 59.) The Court

found that the proposed class action settlement was fundamentally unfair to a subset of class members because it required class members to release reporting time claims which Plaintiffs admitted were not amenable to class treatment because those claims lacked commonality.

On November 10, 2014, Plaintiffs withdrew their motion for preliminary approval before the findings and recommendations were addressed by the district judge assigned to this action. (ECF No. 60.) Plaintiffs filed the present motion on December 12, 2014. (ECF No. 66.)

**C.     Terms of the Proposed Class Settlement**

Under the terms of the proposed settlement, Defendant agrees to pay $900,000.00 in cash to resolve the claims of any class members who do not timely and validly opt out. The $900,000.00 is paid by Defendant on a non-reversionary basis. The parties propose the following deductions from the $900,000.00 settlement figure:

- up to $10,000 to Ceja-Corona and $7,500 for Armenta for their services and participation as class representatives;
- up to $270,000 to Class Counsel for attorneys' fees and up to $15,000 for litigation costs;
- $7,500 to the California Labor and Workforce Development Agency ("LWDA") for penalties pursuant to Labor Code § 2699, et seq.; and
- $30,700 for the costs of claims administration.

The parties seek to approve two classes for purposes of settlement. The first class, the "California Claims Class," is defined as:

> All persons who are or have been employed by CVS at distribution centers as nonexempt, hourly employees in the State of California at any time from October 9, 2008 through the Court's preliminary approval of this Settlement or July 7, 2014, whichever occurs first.

Since July 7, 2014 has already passed, the Court presumes that the July 7, 2014 cut-off date applies for class members.

The second class, the "PAGA Claims Class," is defined as:

> All persons who are or have been employed by CVS at distribution centers as nonexempt, hourly employees in the State of California at any time from February 26, 2013 through the Court's preliminary approval of this Settlement, or July 7, 2014, whichever occurs first.

4

The parties report that the California Claims Class consists of 2,270 people and the PAGA Claims Class consists of 1,759 people.

The proposed settlement provides that a formula will be applied to distribute the settlement funds to each participating class member based upon the amount of wages the member worked during the relevant time period. The wages earned by an individual member during the relevant time period will be divided by the aggregated total wages of all members during the relevant time period to determine the percentage of the settlement pool that the individual member will receive. Any remaining funds in the settlement pool will be transferred to a charity, the CVS Health Employee Relief Fund.

The parties propose the following timeline for settlement:

| Timing | Event |
| --- | --- |
| 20 calendar days after preliminary approval of settlement | Defendant provides Claims Administrator mailing addresses for Class Members |
| 30 calendar days after preliminary approval of settlement | Claims Administrator mails Notice Packet to Class Members |
| 45 calendar days after Claims Administrator mails to Class Members | Deadline for Class Members to submit Claim Forms, exclusion forms, or objections. |
| 28 days before final approval hearing | Plaintiff files Motion for Final Approval of Class Action Settlement |
| May 6, 2015 | Final Approval Hearing |

## II.

## LEGAL STANDARDS FOR APPROVAL OF CLASS SETTLEMENTS

Federal Rule of Civil Procedure 23(e) states:

> (e)  Settlement, Voluntary Dismissal, or Compromise. The claims, issues or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
> (1)  The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
> (2)  If the proposal would bind class members, the court may

> approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
> (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
> (4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.
> (5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Rule 23 "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992)). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Id. (citing Officers for Justice v. Civil Serv. Comm'n of San Francisco, 688 F.2d 615, 628 (9th Cir. 1982)).

"Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." Hanlon, 150 F.3d at 1026 (citing Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993)). "To survive appellate review, the district court must show it has explored comprehensively all factors." Id.

Moreover:

> Several circuits have held that settlement approval that takes place prior to formal class certification requires a higher standard of fairness. The dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e).... Because settlement class actions present unique due process concerns for absent class members, we agree with our sister circuits and adopt this standard as our own.

Hanlon, 150 F.3d at 1026.

## III.

## DISCUSSION

### A. Impact of Integrity Staffing Solutions, Inc. v. Busk

The Court notes that recently, in Integrity Staffing Solutions, Inc. v. Busk, 135 S.Ct. 513 (2014), the United States Supreme Court held that time spent by employees waiting for and undergoing security screenings before leaving the workplace is not compensable under FLSA. During a telephonic conference on December 16, 2014, the parties informed the Court that they wished to proceed with settlement because they believe that liability is still a possibility under California state law. The Supreme Court's opinion in Integrity Staffing Solutions was premised on its interpretation of the Portal-to-Portal Act of 1947 and how it exempts employers from liability for certain categories of work-related activities. In contrast, California law's definition for "hours worked" is defined differently and California law does not include an exemption similar to the Portal-to-Portal Act. See Morillion v. Royal Packing Co., 22 Cal. 4th 575, 590-91 (2000). Accordingly, Plaintiffs' claims under the California Labor Code are still viable in light of Integrity Staffing Solutions.

### B. Class Certification

When the parties seek approval of a proposed class action settlement, the Court must "ascertain whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to all class actions, namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." Hanlon, 150 F.3d at 1019 (citing Amchem Products, Inc. v. Windsor, 521 U.S. 591, 613 (1997)). Courts "must pay 'undiluted, even heightened, attention' to class certification requirements in a settlement context." Id. (quoting Amchem Products, Inc., 521 U.S. at 620).

Additionally, Plaintiffs seek certification of a class under Federal Rule of Civil Procedure 23(b)(3), which requires a demonstration that questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Finally, the Court notes:

> Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficient numerous parties, common questions of law or fact, etc. We recognized in Falcon that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," [citation] and that certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied, [citation]."

Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) (italics in original). In other words, Plaintiffs' must *prove*, with supporting evidence, that the class certification requirements are met in this action.

### 1. Numerosity

The numerosity requirement is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs' motion for preliminary approval establishes that there are 2,270 members in the California Claims Class and 1,759 members in the PAGA Claims Class. The Court finds that these classes are sufficiently numerous.

### 2. Commonality

The commonality requirement is satisfied where "there are questions of law or fact that are common to the class." Fed. R. Civ. P. 23(a)(2). However, "[a]ll questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Hanlon, 150 F.3d at 1019.

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) (quoting General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 157 (1982)). "This does not mean merely that they have all suffered a violation of the same provision of law." Id. "Their claims must depend upon a common contention.... That common contention, moreover, must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth

1 or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." Id.

The Court finds that commonality exists with respect to the claims based upon Defendant's security check policy and unpaid wages for off-the-clock time spent going through security checks. The amended motion states that class members are employed at two distributions in California, one in the city of Patterson and the other in La Habra. Employees at both distribution centers are subjected to the same security policy which provides for random inspections of employees to ensure that employees are not stealing inventory. Employees at both distribution centers are required to go through a security check where guards check purses, bags, and lunch bags for stolen inventory. Plaintiff contends that this policy raises a common contention among all class members regarding whether class members should have been compensated for their time undergoing these security checks.

3.  Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" This does not require the claims to be substantially identical, but that the representatives claims be "reasonably co-extensive with those of the absent class members." Hanlon, 150 F.3d at 1020.

The amended motion demonstrates that the claims of Plaintiffs Leticia Ceja-Corona and Margarita Rubio Armenta are typical to the claims of the class. Both named plaintiffs worked at the Patterson Distribution Center, was subjected to security checks, and was not compensated for her time spent going through security checks.

4.  Adequacy of Representation

The named plaintiffs must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). In determining whether the named plaintiffs will adequately represent the class, the courts must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon, 150 F.3d at 1020. "Adequate representation depends on, among other factors, an absence of antagonism between

representatives and absentees, and a sharing of interest between representatives and absentees. Ellis v. Costco Wholesale Corp., 657 F.3d 970, 985 (9th Cir. 2011) (citations omitted).

At the stage, the Court is satisfied with Plaintiffs' demonstration that they will adequately represent the class.

5. Predominance

"[T]he focus of the Rule 23(b)(3) predominance inquiry is on the balance between individual and common issues." Alberto v. GMRI, Inc., 252 F.R.D. 652, 663 (E.D. Cal. 2008). Where common questions present a significant aspect of the case and are able to be resolved for all class members in a single action, the case can be handled on a representative rather than individual basis. Alberto, 252 F.R.D. at 663.

The Court finds that Plaintiffs have adequately demonstrated predominance with respect to the claims related to off-the-clock time spent going through security checks.

6. Superiority

Rule 23(b)(3) provides that courts should consider "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Where the parties have agreed to pre-certification settlement (D) and perhaps (C) are irrelevant. Amchem, 521 U.S. at 620.

**C. Whether the Proposed Settlement is Fundamentally Fair, Adequate, and Reasonable**

Plaintiffs must demonstrate that the proposed settlement is fundamentally fair, adequate, and reasonable. Hanlon, 150 F.3d at 1026 (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992)). "Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant;

and the reaction of the class members to the proposed settlement." Hanlon, 150 F.3d at 1026 (citing Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993)).

The Court is satisfied with Plaintiffs' demonstration that the proposed settlement is fundamentally fair, adequate, and reasonable. Unlike the parties' prior settlement, the proposed settlement no longer requires class members to release their reporting time claims. Moreover, unlike the parties' prior settlement, Plaintiffs have given the LWDA written notice of the proposed settlement and PAGA allocation and the LWDA may object to the terms of the proposed settlement if they choose.

### D. Attorneys' Fees

Plaintiffs continue to rely on the same arguments rejected by the Court concerning the 30% allocation for attorneys' fees. For the same reasons set forth in the prior Findings and Recommendations and the reasons set forth below, the Court finds that Plaintiffs have not justified a 30% allocation for attorneys' fees.

"Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." In re Bluetooth Headset Products Liability Litigation, 654 F.3d 935, 942 (9th Cir. 2011). In this case, Plaintiffs ask for a percentage of the recovery for attorneys' fees and have not submitted information necessary for the Court to calculate a lodestar figure. "[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." Id. (citing Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990)).

In the prior Findings and Recommendations, the Court noted that Plaintiffs failed to identify extraordinary circumstances that would justify the 30% rate. Plaintiffs have not presented any new or different evidence or argument which changes the result for the present motion.

Plaintiffs cite a number of cases where attorneys' fees were awarded at rates higher than 25%. However, in these cases, the court identified circumstances justifying a higher rate. In In re Pacific Enterprises Securities Litigation, 47 F.3d 373, 379 (9th Cir. 1995), a 33% fee was

justified because of the complexity of issues and the nonmonetary benefits achieved by the lawsuit. This action was relatively non-complex and there are no nonmonetary benefits to speak of.

In <u>In re Activision Securities Litigation</u>, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989), the district court stated that 30% should be the standard rate in class action common fund cases, which is no longer the case since the Ninth Circuit has established 25% as the benchmark rate. Further, in that case, while the attorneys received 32.8% of the settlement, only "22% of which was for attorneys' fees, the remainder being expenses." <u>Id.</u>

In <u>Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043, 1049 (9th Cir. 2002), the settlement also involved substantial nonmonetary benefits. The case also involved eleven years of work and hundreds of thousands of dollars of expense. <u>Id.</u> at 1050.

Although Plaintiffs cite <u>Van Vranken v. Atlantic Richfield Co.</u>, 901 F. Supp. 294 (N.D. Cal. 1995), in their brief, it provides no support, as the district court rejected the plaintiffs' request for a 40% contingency fee and awarded the benchmark award of 25 percent.

In <u>In re Ampicillin Antitrust Litigation</u>, 526 F. Supp. 494, 499 (D.D.C. 1981), the court awarded 45% of the settlement fund for attorneys' fees. However, the court recognized that "the bulk of the fee awards" in similar cases are less than 25%. <u>Id.</u> at 498. The increased award appears to be premised on the complexity of the case, which involved multidistrict antitrust litigation of several cases across multiple states and involving eleven separate attorney offices.

Plaintiffs cite <u>In re Warner Communications Securities Litigation</u>, 618 F. Supp. 735 (S.D.N.Y. 1985), in their brief. However, the case does not support their position here, as the court ultimately awarded fees which amounted to slightly less than 25% of the settlement fund. <u>Id.</u> at 747.

The Court finds that Plaintiffs have not demonstrated that special circumstances warrant a departure from the 25% benchmark for a reasonable fee. As the Court noted earlier, settlement in this action was reached relatively early, prior to class certification. Further, this case was filed in November 2012 and was litigated for only a little over two years, and it was apparent that the action would settle as early as July 2014, when the first motion for preliminary approval was

filed. Finally, the Court informed Plaintiff in the previous Findings and Recommendations that Plaintiffs could submit evidence of the actual number of hours worked to demonstrate that the amount of work performed justified a higher award. Plaintiffs chose not to take the Court up on this offer and have submitted no additional evidence regarding the number of hours worked in this case.

At the hearing, Plaintiffs informed the Court that they can present detailed timesheets to justify a 30% allocation. Plaintiffs also informed the Court that, if the Court does not approve a 30% rate, the parties are agreeable to allowing the excess funds to be distributed to the class. Accordingly, the Court will recommend that the motion for preliminary approval be granted, leaving final determination of attorneys' fees for determination at the hearing on final approval of the settlement.

## IV.

## CONCLUSION AND RECOMMENDATION

For the reasons set forth above, the Court finds that class certification is appropriate and the proposed settlement is fundamentally fair, adequate, and reasonable.

Accordingly, it is HEREBY RECOMMENDED that Plaintiffs' motion for preliminary approval of the class action settlement be GRANTED.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of this recommendation, any party may file written objections to these

//
//
//
//
//
//
//
//

findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**January 14, 2015**__

UNITED STATES MAGISTRATE JUDGE