# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LETICIA CEJA-CORONA, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CVS PHARMACY, INC.,<br><br>Defendant. | Case No. 1:12-cv-01868-SAB<br><br>ORDER DENYING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND DENYING MOTION FOR ATTORNEYS' FEES<br><br>ECF NO. 79, 80 |

On June 22, 2015, Plaintiff Leticia Ceja-Corona, on behalf of herself and all others similarly situated ("Plaintiffs"), filed a motion for final approval of class action settlement and a motion for attorneys' fees. (ECF Nos. 79, 80.) Plaintiffs' motions are unopposed. All parties have consented to the jurisdiction of a United States Magistrate Judge for all purposes. (ECF Nos. 72, 75.)

The hearing on the motions took place on July 22, 2015. Michelle Jackson appeared on behalf of Plaintiffs. Jody Landry appeared on behalf of Defendant. For the reasons set forth below, the Court denies the motion for final approval and for attorneys' fees.

/ / /

/ / /

/ / /

1

# I.

# BACKGROUND

### A.  Factual and Procedural Background

The operative complaint in this action is the Second Amended Complaint filed on February 26, 2014. (ECF No. 45.) Plaintiffs' complaint raises six causes of action: 1) for failure to pay minimum wages and overtime, 2) for failure to provide reporting time pay, 3) for failing to provide accurate earnings statements, 4) for failure to timely pay wages upon termination, 5) for unfair competition under California Business & Professions Code § 17200, and 6) for failure to pay wages and overtime for off-the-clock work, and 7) for penalties under California's Private Attorney's General Act, California Labor Code § 2699.

Plaintiffs Leticia Ceja-Corona and Margarita Rubio Armenta were employed by Defendant CVS Pharmacy, Inc. ("Defendant") in the County of Stanislaus in California. (Second Am. Compl. ¶ 2.) Plaintiffs originally brought this action on behalf of two classes: first, on behalf of all persons who are or have been employed by Defendant at distribution centers as nonexempt hourly employees in the State of California at any time four years prior to the filing of this lawsuit and continuing on to the present. (Second Am. Compl. ¶ 27.) The second class consists of all persons who are or have been employed by Defendant at distribution centers as nonexempt hourly employees at any time three (3) years prior to the filing of this lawsuit and continuing to the present and who elect to opt into this action. (Second Am. Compl. ¶ 27.)

Plaintiffs allege that Defendant failed to pay Plaintiffs all wages, overtime, and reporting time pay due under the California Labor Code, the applicable California Industrial Welfare Commission Wage Orders, and the Fair Labor Standards Act. (Second Am. Compl. ¶ 10.) Plaintiffs allege that, prior to clocking in for the day, they must gain admittance into distribution centers using security badges that are swiped before passing through turnstiles. (Second Am. Compl. ¶ 14.) After entering the facility, employees must deposit their personal belongings in lockers because Defendant's policy prohibits employees from taking personal belongings into areas where merchandise is stored. (Second Am. Compl. ¶ 15.) While at their lockers, employees must also collect the tools they use to perform their job duties. (Second Am. Compl.

¶ 15.) Employees then walk to the stock room, which requires employees to swipe their security badges. (Second Am. Compl. ¶ 16.) Frequently, there is a line of employees entering the stock room. (Second Am. Compl. ¶ 16.) Employees do not clock in until they are inside the stock room, and spend 15-20 minutes going through the entry process before they clock in. (Second Am. Compl. ¶ 16.) Employees must repeat the same process any time they leave the distribution center for a lunch or rest break. (Second Am. Compl. ¶ 16.) Employees are not compensated for this time. (Second Am. Compl. ¶ 16.)

Any time an employee leaves the distribution center, they must return to their lockers, return their tools and collect their personal belongings before going through the security screenings required by Defendant. (Second Am. Compl. ¶ 17.) During the security screenings, employees are searched. (Second Am. Compl. ¶ 18.) Often, employees must wait in long lines while other employees are searched as they leave. (Second Am. Compl. ¶ 18.) Employees spend 15-20 minutes after clocking out to go through the security screening and are not compensated for their time. (Second Am. Compl. ¶ 20.)

Plaintiffs allege that the off-the-clock work described above causes employees to work overtime, either extending their shifts more than eight hours per day or over forty hours per week. (Second Am. Compl. ¶ 21.) Plaintiffs further allege that, in some instances, employees reported to work, but were given no work to do or worked less than one half of their scheduled shift, but did not receive reporting time pay. (Second Am. Compl. ¶ 22.) Plaintiffs further allege that employees were not given timely, accurate and itemized wage statements. (Second Am. Compl. ¶ 23.) Plaintiffs also allege that employees who quit their jobs with Defendant were not given all wages owed to them within 72 hours of resignation or thirty days thereafter. (Second Am. Compl. ¶ 24.)

After the Court recommended that the first motion for preliminary approval of class action settlement be denied (ECF Nos. 48, 55, 59), the parties filed a second motion for preliminary approval which the Court granted (ECF Nos. 66, 71, 73). The parties now seek final approval of their class action settlement.

///

**B.     Terms of the Settlement**

Under the terms of the proposed settlement, Defendant agrees to pay $900,000.00 in cash to resolve the claims of any class members who do not timely and validly opt out.  The $900,000.00 is paid by Defendant on a non-reversionary basis.  The parties propose the following deductions from the $900,000.00 settlement figure:

- up to $10,000 to Ceja-Corona and $7,500 for Armenta for their services and participation as class representatives;
- up to 30% of the Maximum Gross Settlement Amount for attorneys' fees ($270,000) and up to $15,000 for litigation costs;
- $7,500 to the California Labor and Workforce Development Agency ("LWDA") for penalties pursuant to Labor Code § 2699, et seq.; and
- $30,700 for the costs of claims administration.

The proposed settlement provides that a formula will be applied to distribute the settlement funds to each participating class member based upon the amount of wages the member worked during the relevant time period.  The wages earned by an individual member during the relevant time period will be divided by the aggregated total wages of all members during the relevant time period to determine the percentage of the settlement pool that the individual member will receive.  Any remaining funds in the settlement pool will be transferred to a charity, the CVS Health Employee Relief Fund.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) states:

> (e)     Settlement, Voluntary Dismissal, or Compromise.  The claims, issues or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval.  The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
> (1)     The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
> (2)     If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
> (3)     The parties seeking approval must file a statement

>identifying any agreement made in connection with the proposal.
>(4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.
>(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Rule 23 "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992)). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Id. (citing Officers for Justice v. Civil Serv. Comm'n of San Francisco, 688 F.2d 615, 628 (9th Cir. 1982)).

"Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." Hanlon, 150 F.3d at 1026 (citing Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993)). "To survive appellate review, the district court must show it has explored comprehensively all factors." Id.

Moreover:

>Several circuits have held that settlement approval that takes place prior to formal class certification requires a higher standard of fairness. The dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e).... Because settlement class actions present unique due process concerns for absent class members, we agree with our sister circuits and adopt this standard as our own.

Hanlon, 150 F.3d at 1026.

///

## III.

## DISCUSSION

In its previous order granting preliminary approval of the class action settlement, the Court found that the proposed settlement satisfies the requirements of Federal Rule of Civil Procedure 23(a), namely (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. The Court further found that the proposed class met the predominance and superiority requirements of Rule 23(b)(3). The Court further found that the settlement was fundamentally fair, adequate, and reasonable, with one exception which is addressed below. Since preliminary approval, notice of the settlement was sent to class members. No class member has objected to the terms of the settlement and the terms of the settlement have not changed since preliminary approval. Accordingly, the Court adopts the same analysis set forth in the January 14, 2015 Findings and Recommendations Recommending that Plaintiffs' Motion for Preliminary Approval of Class Action Settlement be Granted. (See ECF No. 71.)

The only issue questioned by the Court during preliminary approval was the matter of attorneys' fees and whether Plaintiffs' request of 30% of the Maximum Gross Settlement Amount was fundamentally fair and reasonable to the class as a whole. In the order granting preliminary approval, the Court noted that it has discretion to employ either the lodestar method or the percentage-of-recovery method in determining attorney's fees in class actions. See In re Bluetooth Headset Products Liability Litigation, 654 F.3d 935, 942 (9th Cir. 2011); see also Lealao v. Beneficial California, Inc., 82 Cal. App. 4th 19, 27 (2000). The Court then noted that when using a percentage-of-recovery method, cases have viewed 25% of the fund as a "benchmark" for a reasonable fee award and require adequate explanation in the record to justify any departure. See In re Bluetooth Headset Products Liability Litigation, 654 F.3d at 942.

Plaintiffs argue that the Court should disregard the 25% benchmark in this action because Plaintiffs claims are based upon California substantive law and that California law should govern the award of fees. Plaintiffs argue that there is no "benchmark" fee award under California law. However, at least two California courts have cited and approved the 25% benchmark figure. Lealao v. Beneficial California, Inc., 82 Cal. App. 4th 19, 24 n.1 (2000); In re Consumer Privacy

1  Cases, 175 Cal. App. 4th 545, 557 n.13 (2009). Plaintiffs cite no California authority rejecting
2  the idea of a 25% benchmark. It is also worth noting that In re Bluetooth Headset Products
3  Liability Litigation involved claims arising under California's consumer production laws.
4  Moreover, California law is identical to federal law in that the goal of both is to produce a
5  reasonable fee award to compensate counsel for their efforts, irrespective of the method of
6  calculation. Compare In re Consumer Privacy Cases, 175 Cal. App. 4th 545, 557-58 (2009) with
7  In re Bluetooth Headset Products Liability Litigation, 654 F.3d 935, 941-42 (9th Cir. 2011).

8      The issue in this case is that Plaintiffs submitted very little evidence supporting their
9  contention that the 30% attorneys' fee award is reasonable. The Court informed Plaintiffs of this
10 deficiency during preliminary certification and informed Plaintiffs that would need to submit
11 additional evidence to support their requested fee. Despite the Court's order, Plaintiffs have
12 submitted very little additional evidence.

13     To support their request for 30% in attorneys' fees, Plaintiffs cite several cases where
14 courts awarded 30% or higher in attorneys' fees. However, this is counterbalanced by the cases
15 cited by the Court identifying 25% as the "benchmark." Determining reasonable attorneys' fees
16 in a particular case is a fact-intensive venture by the Court. Citations to other cases is helpful
17 only if Plaintiffs submit evidence demonstrating that the facts of this case are analogous to the
18 facts of the cited case. Plaintiff did not do so in this case.

19     For example, with respect to the lodestar analysis, Plaintiffs did not submit any evidence
20 regarding the appropriate hourly rate for attorneys within this district. Plaintiffs cite cases where
21 this Court has awarded hourly rates ranging from $600 per hour and higher. However, case
22 citations are not evidence. See M/V Am. Queen v. San Diego Marine Constr. Corp., 708 F.2d
23 1483, 1491 (9th Cir. 1983). Other cases found reasonable rates much lower than those claimed
24 by Plaintiffs. See Rey v. Madera Unified School Dist., 203 Cal. App. 4th 1223, 1241 (2012)
25 (decreasing hourly rate for out-of-town attorneys from higher fee area to blended local rate of
26 $325 per hour); Rojas v. Zaninovich, No. 1:09-cv-0705-AWI-JLT, 2015 WL 3657172, at *22-31
27 (E.D. Cal. Jun. 11, 2015) (in wage and hour claim, hourly rates for lodestar calculation ranged
28 from $175 to $380 per hour). Given the range of fees awarded by this Court in a wide variety of

contexts, it would have been helpful for the Court if Plaintiffs submitted evidence of actual rates charged by actual attorneys in the local area practicing wage and hour law to justify the lodestar rates proposed by Plaintiffs. Plaintiffs chose not to do so.

Similarly, Plaintiffs submit a declaration that they spent 627.3 hours of attorney time litigating this case. However, Plaintiffs submit no evidence explaining what work was performed during those 627.3 hours such as timesheets. Accordingly, the Court cannot evaluate whether these hours were reasonably expended.

Under federal law, the Court may adjust the lodestar figure upward or downward using a "multiplier" after considering factors such as (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975).

Plaintiffs offer boilerplate justification of why these factors would justify an upward multiplier of the fees, but none of the proffered reasons are substantial. While Plaintiffs taut the "significant benefit" achieved on behalf of the class, every class action that reaches a settlement achieves a "significant benefit" for the class in the eyes of their attorneys. Plaintiffs identify no risk undertaken by counsel which does not exist in any class action lawsuit. Plaintiffs do not present any substantial arguments relating to the remaining factors.

Based upon the foregoing, the Court finds that an allocation of 30% of the Gross Maximum Settlement Amount does not constitute a fair and reasonable settlement on behalf of the class. Accordingly, the Court will deny final approval of the settlement of that reason. As stated in the order granting preliminary approval, the benchmark of 25% appears to be a more appropriate figure. Accordingly, the Court will deny final approval without prejudice to the parties' right to request final approval based upon a 25% allocation for attorneys' fees.

However, the Court will not permit Plaintiffs to resubmit a motion for final approval of a settlement requesting 30% in attorneys' fees based upon additional evidence which could have been presented earlier. It may be that a 30% attorney fee award could have been supported by a more comprehensive record submitted to the Court. Plaintiffs did not submit a comprehensive record and attempted to justify the 30% attorney fee award based upon minimal evidence. The Court has given Plaintiffs two chances at submitting a sufficient record to support their request. The Court will not give Plaintiffs a third bite at the apple and support their minimal and incremental efforts to meet their burden of proof.

## IV.
## CONCLUSION AND ORDER

The Court finds that the proposed class action settlement is not fundamentally fair and reasonable because Plaintiffs have not demonstrated that a 30% allocation of the Gross Maximum Settlement Amount for attorney' fees is justified.

Accordingly, it is HEREBY ORDERED that the motion for final approval of class action settlement is DENIED.

IT IS SO ORDERED.

Dated:   **July 24, 2015**

UNITED STATES MAGISTRATE JUDGE