# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LETICIA CEJA-CORONA, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CVS PHARMACY, INC.,<br><br>Defendant. | Case No. 1:12-cv-01868-SAB<br><br>ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES<br><br>ECF NO. 86, 87 |

On August 26, 2015, Plaintiff Leticia Ceja-Corona, on behalf of herself and all others similarly situated ("Plaintiffs"), filed a second motion for final approval of class action settlement and a second motion for attorneys' fees. (ECF Nos. 86, 87.) Plaintiffs' motions are unopposed. All parties have consented to the jurisdiction of a United States Magistrate Judge for all purposes. (ECF Nos. 86, 87.)

The Court finds it appropriate for the motion for final approval to be submitted upon the record and briefs on file without need for oral argument. See Local Rule 230(g). For the reasons set forth below, the Court grants the motions for final approval and for attorneys' fees.

/ / /

/ / /

/ / /

1

# I.

# BACKGROUND

### A.  Factual and Procedural Background

The operative complaint in this action is the Second Amended Complaint filed on February 26, 2014. (ECF No. 45.) Plaintiffs' complaint raises six causes of action: 1) for failure to pay minimum wages and overtime, 2) for failure to provide reporting time pay, 3) for failing to provide accurate earnings statements, 4) for failure to timely pay wages upon termination, 5) for unfair competition under California Business & Professions Code § 17200, and 6) for failure to pay wages and overtime for off-the-clock work, and 7) for penalties under California's Private Attorney's General Act, California Labor Code § 2699.

Plaintiffs Leticia Ceja-Corona and Margarita Rubio Armenta were employed by Defendant CVS Pharmacy, Inc. ("Defendant") in the County of Stanislaus in California. (Second Am. Compl. ¶ 2.) Plaintiffs originally brought this action on behalf of two classes: first, on behalf of all persons who are or have been employed by Defendant at distribution centers as nonexempt hourly employees in the State of California at any time four years prior to the filing of this lawsuit and continuing on to the present. (Second Am. Compl. ¶ 27.) The second class consists of all persons who are or have been employed by Defendant at distribution centers as nonexempt hourly employees at any time three (3) years prior to the filing of this lawsuit and continuing to the present and who elect to opt into this action. (Second Am. Compl. ¶ 27.)

Plaintiffs allege that Defendant failed to pay Plaintiffs all wages, overtime, and reporting time pay due under the California Labor Code, the applicable California Industrial Welfare Commission Wage Orders, and the Fair Labor Standards Act. (Second Am. Compl. ¶ 10.) Plaintiffs allege that, prior to clocking in for the day, they must gain admittance into distribution centers using security badges that are swiped before passing through turnstiles. (Second Am. Compl. ¶ 14.) After entering the facility, employees must deposit their personal belongings in lockers because Defendant's policy prohibits employees from taking personal belongings into areas where merchandise is stored. (Second Am. Compl. ¶ 15.) While at their lockers, employees must also collect the tools they use to perform their job duties. (Second Am. Compl.

1 ¶ 15.) Employees then walk to the stock room, which requires employees to swipe their security
2 badges. (Second Am. Compl. ¶ 16.) Frequently, there is a line of employees entering the stock
3 room. (Second Am. Compl. ¶ 16.) Employees do not clock in until they are inside the stock
4 room, and spend 15-20 minutes going through the entry process before they clock in. (Second
5 Am. Compl. ¶ 16.) Employees must repeat the same process any time they leave the distribution
6 center for a lunch or rest break. (Second Am. Compl. ¶ 16.) Employees are not compensated for
7 this time. (Second Am. Compl. ¶ 16.)

8 Any time an employee leaves the distribution center, they must return to their lockers,
9 return their tools and collect their personal belongings before going through the security
10 screenings required by Defendant. (Second Am. Compl. ¶ 17.) During the security screenings,
11 employees are searched. (Second Am. Compl. ¶ 18.) Often, employees must wait in long lines
12 while other employees are searched as they leave. (Second Am. Compl. ¶ 18.) Employees spend
13 15-20 minutes after clocking out to go through the security screening and are not compensated
14 for their time. (Second Am. Compl. ¶ 20.)

15 Plaintiffs allege that the off-the-clock work described above causes employees to work
16 overtime, either extending their shifts more than eight hours per day or over forty hours per
17 week. (Second Am. Compl. ¶ 21.) Plaintiffs further allege that, in some instances, employees
18 reported to work, but were given no work to do or worked less than one half of their scheduled
19 shift, but did not receive reporting time pay. (Second Am. Compl. ¶ 22.) Plaintiffs further allege
20 that employees were not given timely, accurate and itemized wage statements. (Second Am.
21 Compl. ¶ 23.) Plaintiffs also allege that employees who quit their jobs with Defendant were not
22 given all wages owed to them within 72 hours of resignation or thirty days thereafter. (Second
23 Am. Compl. ¶ 24.)

24 After the Court recommended that the first motion for preliminary approval of class
25 action settlement be denied (ECF Nos. 48, 55, 59), the parties filed a second motion for
26 preliminary approval which the Court granted (ECF Nos. 66, 71, 73). The parties previously
27 filed a motion for final approval of class action settlement (ECF No. 79, 80) which the Court
28 denied due to the amount requested for attorneys' fees being inadequately supported by the

record.  The parties now filed a second motion for final approval.  (ECF No. 86, 87.)

**B.     Terms of the Settlement**

Under the terms of the proposed settlement, Defendant agrees to pay $900,000.00 in cash to resolve the claims of any class members who do not timely and validly opt out.  The $900,000.00 is paid by Defendant on a non-reversionary basis.  The parties propose the following deductions from the $900,000.00 settlement figure:

- up to $10,000 to Ceja-Corona and $7,500 for Armenta for their services and participation as class representatives;
- 25% of the Maximum Gross Settlement Amount for attorneys' fees ($225,000) and up to $15,000 for litigation costs;
- $7,500 to the California Labor and Workforce Development Agency ("LWDA") for penalties pursuant to Labor Code § 2699, et seq.; and
- $30,700 for the costs of claims administration.

The proposed settlement provides that a formula will be applied to distribute the settlement funds to each participating class member based upon the amount of wages the member worked during the relevant time period.  The wages earned by an individual member during the relevant time period will be divided by the aggregated total wages of all members during the relevant time period to determine the percentage of the settlement pool that the individual member will receive.  Any remaining funds in the settlement pool will be transferred to a charity, the CVS Health Employee Relief Fund.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) states:

> (e)     Settlement, Voluntary Dismissal, or Compromise.  The claims, issues or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval.  The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
> (1)     The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
> (2)     If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair,

4

>
> reasonable, and adequate.
> (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
> (4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.
> (5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Rule 23 "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992)). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Id. (citing Officers for Justice v. Civil Serv. Comm'n of San Francisco, 688 F.2d 615, 628 (9th Cir. 1982)).

"Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." Hanlon, 150 F.3d at 1026 (citing Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993)). "To survive appellate review, the district court must show it has explored comprehensively all factors." Id.

Moreover:

> Several circuits have held that settlement approval that takes place prior to formal class certification requires a higher standard of fairness. The dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e).... Because settlement class actions present unique due process concerns for absent class members, we agree with our sister circuits and adopt this standard as our own.

Hanlon, 150 F.3d at 1026.

## III.

## DISCUSSION

In its previous orders granting preliminary approval and denying the first attempt at final approval of the class action settlement, the Court found that the proposed settlement satisfies the requirements of Federal Rule of Civil Procedure 23(a), namely (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. The Court further found that the proposed class met the predominance and superiority requirements of Rule 23(b)(3). The Court further found that the settlement was fundamentally fair, adequate, and reasonable, with the exception of the issue of attorneys' fees. The Court found that a 30% attorney fee did not seem warranted on the facts presented in the record, and suggested that the benchmark rate of 25% would be appropriate. Plaintiffs have since amended their motion for final approval, which is identical to the prior motion except Plaintiffs now request the 25% attorney fee benchmark rate.

The Court adopts the previous analysis set forth in the prior order granting preliminary approval and the prior order on final approval of the class action settlement. Accordingly, the Court finds that the proposed settlement satisfies the requirements of Rule 23(a) and Rule 23(b)(3) and the settlement is fundamentally fair, adequate, and reasonable.

## IV.

## CONCLUSION AND ORDER

The Court finds that the proposed class action settlement is fundamentally fair and reasonable.

//
//
//
//
//
//
//
//

1    Accordingly, it is HEREBY ORDERED that the motion for final approval of class action
2 settlement and motion for attorneys' fees are GRANTED.  Final approval of the class settlement
3 action is APPROVED on the terms submitted by the parties in the August 26, 2015 motion for
4 attorneys' fees and motion for final approval.

IT IS SO ORDERED.

Dated:   **September 22, 2015**
　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE